Morris v. Morris County.

GEORGE MORRIS, *et al.*, v. COMMISSIONERS OF MORRIS CO.

1. MUNICIPAL AID TO RAILROADS—*Validity of Statutes.* The acts of the legislature of the State of Kansas authorizing counties to subscribe for stock in, and issue bonds to, railroad companies, are constitutional and valid. (Following and affirming *Comm'rs of Leavenworth Co. v. Miller*, ante p. 479, and *The State, ex rel., v. Nemaha Co.*, ante p. 542.)

2. ————— *Statutes construed.* Where a county, by a vote of the people thereof, obtained the right, under Ch. 12, Laws of 1865, and Ch. 24, Laws of 1866, to subscribe for stock in, and issue bonds to, a railroad company, such right was not abrogated by the legislation of 1868 and 1869, (Gen. Stat. 1868, p. 203, §§ 51 to 54; id., p. 892, §§ 1 to 4; id., pp. 1123 to 1128, §§ 1, 2, 6, and 8; Laws of 1869, pp. 108 to 110;) but such right was continued in force.

3. VOTING BONDS—*Conditions may be changed by second election.* Where an election was held under the acts of 1865 and 1866 authorizing such a subscription and the issuing of bonds to a railroad company upon certain conditions, and where another election was held under the laws as they existed on the 22d of May, 1869, for the purpose of changing in some respects such conditions, *held*, that said second election was valid.

*Error from Morris District Court.*

INJUNCTION, brought by *George Morris*, and 109 other citizens and tax-payers of Morris county, against *The Board of County Commissioners*, and *Jonathan Hammond*, as county clerk, and *William F. Shamleffer*, as county treasurer, of Morris county, to restrain and enjoin the collection of a tax of ten mills on the dollar, for "railroad purposes," levied upon the taxable real and personal property of plaintiffs and other tax-payers of said county by said board of county commissioners on the 5th of September, 1870, upon the assessment made for said year. The plaintiffs are all named in the petition, and the real property of each described, and amount of personal property stated, subject to taxation. The plaintiffs

allege that said levy was made to pay interest on $165,000 of Morris county bonds issued October 26, 1869, in payment of a subscription of that amount made October 4th, 1869, by the county commissioners to the capital stock of the Union Pacific Railroad, Southern Branch; that said subscription was made pursuant to the supposed authority of two certain elections held in said county, to-wit, one held June 29, 1867, whereat the question submitted was whether the county board should be authorized to subscribe for $165,000 of the stock of said railroad company and issue bonds therefor, at which election 170 votes were given in favor of said proposition, and 25 votes were given against the same. Under this election the railroad company were to commence their work at Junction City within one year from that date, and the same was to be completed to Council Grove within two years, and to the Lyon county line within six months thereafter. At the second election, held May 22d, 1869, the question submitted was whether the time for constructing said railroad through said county should be extended, at which election 146 votes were given in favor of the proposition, and 106 votes were given against the same. The plaintiffs alleged that said elections were illegal and void; that the said subscription to the capital stock of said railroad company, the said bonds issued in payment of said subscription, and the taxes so as aforesaid levied "for railroad purposes," were without authority of law, and void. Other facts are stated in the opinion of the court. The defendants demurred, alleging that "the petition does not state facts sufficient to constitute a cause of action." The district court sustained the demurrer, dismissed the petition, and gave judgment against the plaintiffs for costs. The plaintiffs excepted, and brought the case here by petition in error.

37

*Ruggles & Plumb,* and *Shannon & Shannon,* for plaintiffs in error :

1. The foundation of this action is the illegality of the tax the collection of which is sought to be enjoined. The first election took place on the 29th of June, 1867. A failure on the part of the railroad company to comply with the *express conditions* of the vote, to commence their work at Junction City on or before the 29th day of June, 1868, was a breach of the conditions; a like failure to finish the work to Council Grove on or before the 29th day of June, 1869, would be a failure to comply with the conditions; and so of the completion of the road to the Lyon county line on or before the 29th day of December, 1869. The failure on the part of the railroad company to comply with any one of these conditions, discharged the county board, not only from all obligations to subscribe for stock and issue bonds, but divested them of *all power* under the law to subscribe or issue bonds, and the issuance of the bonds by the county board thereafter was without authority of law, and the bonds were void in their inception.

This seems to have been the construction given the vote by the railroad company itself, for on the 17th of April, 1869, the railroad company presented a request to the county board to *extend the time* four months to enable them to comply with these conditions, and on the 22d of May following, an election was held on such proposition. We think it sufficiently appears that the road was not finished to. Council Grove on the 29th of June, 1869.

The election held May 22, 1869, was void. At the date of said vote there was no authority for such anywhere provided by statute. The commissioners might have submitted the question of " subscription of stock," and

that alone; but this they did not do. Said election cannot be held to be amendatory or supplemental to the vote had upon the 29th of June, 1867, upon the question of subscribing stock, for the law under which that vote was had had been repealed before any rights had accrued to the railroad company under it, and so there was nothing to supplement or amend.

2. The vote upon the question of subscribing stock was had under ch. 12 of the laws of 1865, and the amendatory act, ch. 24, laws of 1866. These laws were repealed by the general statutes of 1868, pp. 1123 to 1128, §§ 1, 2, 6,) except so far as rights were accruing or had accrued under them. In this case no rights had accrued.

Neither was there any right "accruing" within the meaning of the statute, for it was always at the option of the railway company, even while the law was in force, to refuse to allow the subscription to be made upon the terms contained in the submission, or upon any other terms; and to refuse to build their road in accordance with the terms of the submission; and if the rights of the railroad and the county were not correlative in the matter, then there was nothing in the relation of the parties upon which the saving clause of the repealing statute could act, for the right saved must have been in its nature a vested right—a right which must, inevitably, become perfect and absolute. In the case at bar this could never have happened, until the actual subscription had taken place, and this was not until the 4th of October, 1869, at which time there was no power to make such a subscription. Sedgwick on Stat. and Con. Construction, 129 to 132; 27 Pa. St., 402; 8 Blackf., 581; 12 B. Monroe, 144; 22 How., 374; 27 N. Y., 378; 3 Wis., 603; 1 Hill, 324.

The right of the railroad company at that time depended solely upon a statute which had no existence.

The vote did not create any right which the law would recognize or enforce. It was a gratuity, in which there could be no vested right. *Land Grant Rly. & Trust Co. v. Comm'rs of Davis Co.*, 6 Kas., 256; 1 Hill, 329.

Sections 51 and 52 of ch. 23, Gen. Stat. of 1868, pp. 203, 204, took the place of the acts of 1865 and 1866, upon the subject of municipal subscriptions to railroads; but they were entirely *prospective* in their operation, and in nowise affected proceedings had under previous statutes. These were in turn succeeded by ch. 29, laws of 1869, which took effect February 27th, of that year, and which was also wholly prospective in its operation, and was the only statute in force on the 4th of October, 1869, when the subscription by the board of Morris county was made.

It has been claimed that the act which took effect February 26, 1868, (Gen. Stat., p. 892) may be resorted to to sustain the issue of these bonds. But we think otherwise. The act was plainly retrospective in its character, and referred to something that had already taken place, and contained no new grant of power whatever. If then, it was not intended as an independent statute or a new grant of power, it could have been but merely curative or supplementary. We assume that all the statutes under which the preliminary proceedings of the county board, and of the people of Morris county, took place, and which were necessary to authorize the subscription to the stock of the railroad company had been repealed and entirely obliterated before the subscription was made. The repeal of a statute takes with it all proceedings, of whatever nature, commenced or prosecuted under it which were not finally concluded at the time of the repeal.

3. Any act of the legislature of the State of Kansas

which assumes to authorize the board of county commissioners of a county to subscribe to the capital stock of a railroad company, and issue the bonds of the county in payment therefor, is beyond the constitutional power of the legislature so to enact, and is therefore void.

The board of county commissioners of a county does not possess the power or authority to subscribe to the capital stock of any railroad company, and issue the bonds of the county in payment therefor, independent of valid statutory authority for that purpose. Any attempted subscription to the capital stock of the Union Pacific Railway, Southern Branch, and issuance of bonds of Morris county in payment for such subscription, by the board of county commissioners of Morris county, are absolutely *void*, as being beyond the power of such board of county commissioners.

The only provisions of our State constitution having any bearing upon the question, are: Art. 2, §§ 1, 17; Art. 11, § 8; Bill of Rights, § 20.

If the power can be sustained at all as being in the legislature, it must be referred to and sustained by the *taxing power*, for the payment of the bonds resolves into a question of taxation.

That the purpose must be a *public* one which will authorize the exercises of the taxing power, all the authorities agree. 21 Penn. St., 167; 27 Iowa, 47; 20 Mich., 452; 25 Wis., 167.

A tax for a *private* purpose is " a solecism in language," for the very right to tax at all is based upon the idea that it is a contribution paid by the citizen, or inhabitant, for the use of the *government*. New Am. Cyclopedia, Vol. 15, 307; Webster's Dict.; Worcester's Dict.

Is the purpose for which this tax is levied and sought to be collected a *public* purpose, such as authorized the

Morris v. Morris County.

exercise of the taxing power? To sustain the position that it is not such a *public* purpose, we refer to the cases above cited, and to 2 Redf. on Rlys, 397, § 230, note.

Sec. 8 of art. 11 of the constitution provides that " the State shall never be a party in carrying on works of internal improvement." By this provision the State is prohibited from doing what is claimed she may authorize a political subdivision of herself to do. Counties are not, perhaps, within the letter, but they are within the spirit, the *equity*, of the provision. And it would seem that the State cannot, through its legislature, delegate to its political subdivisions separately, a power which itself does not possess in the aggregate. This would be making the stream rise higher than the fountain. In support of our views we refer to the dissenting opinion of Ranney, J., concurred in by Caldwell, J., in *Cass v. Dillon*, 2 Ohio St., 624, *et seq.*; also, see 13 Iowa, 418, *et seq.*

" The best judgment of the legal profession, so far as I have been able to judge, has always been against the lawfulness of this species of railroad aid, and there has been a steady and persistent protest, which no popular clamor could silence, against the decisions which support it. This protest has of late been growing stronger instead of fainter, and if the recent decisions alone are regarded, the authority is clearly with the protest." Cooley, J., in *People v. The Town of Salem*, 20 Mich., 452, 473.

*J. B. Somers*, and *McClure & Humphrey*, for defendants in error :

1. The preliminary steps toward the issuance of the bonds in question were taken under and in accordance with the acts of 1865 and 1866. The people of Morris county decided to subscribe to the capital stock of the railway company and issue the bonds of the county to

the amount of $165,000. After the taking of such vote, and before subscribing the stock the act under which the vote was had was repealed; but simultaneously with such repeal the legislature enacted a law (Gen. Stat. 1868, p. 892,) " to authorize counties to issue bonds to railroad companies " in certain cases. This act was evidently intended to authorize counties which had already voted in favor of making such subscriptions to carry out and consummate the expressed wishes of the people. Assuming these laws to be valid, had the county the power and authority to complete, under the last act, what was commenced under the first?

By virtue of the election already held in 1867, the corporate authorities of the county had acquired the right to subscribe for the stock and issue the bonds of the county. The act of 1868 authorized the county commissioners to act in the matter further, precisely as they might have done if the acts of 1865 and 1866 had not been repealed. If the legislature had the power to enact the one act, it can hardly be seriously questioned that it had the power to enact the other.

2. Had the legislature the power to enact either? This is a question which has sorely perplexed the judicial tribunals of the country; and which has evoked more learned discussion and a greater contrariety of opinion than almost any other question which has been brought before the courts. And perhaps for the reason that the question lies near the boundary line dividing judicial and legislative functions.

Among the latest and most noted decisions against the legality of municipal aid to railroads is that of the supreme court of Michigan, (*People v. Salem*, 20 Mich., 452,) in which the opinion was delivered by Judge Cooley. The fundamental proposition upon which Judge Cooley's

decision is based is, that " taxes must be imposed for public purposes only, and that a railroad is not a public object or use." If the last part of this proposition is not sustained, the whole falls to the ground. Railroads are almost uniformly referred to in the decisions as modern public highways. Pierce on Rlys., 244; 1 Redf. Rlys., 229, § 63.

Another objection urged is, that as the State itself is prohibited from being a party to carrying on any works of internal improvement, the subordinate political divisions are included in the prohibition. (§ 8, Art. 11, of the Const.) It must be evident that this provision refers to the State in its sovereign corporate capacity, and in nowise to the subordinate political divisions of the State.

Section 5 of the same article provides that the State shall not contract a debt to exceed one million of dollars. Will it be contended that the prohibition in this section embraces in its scope and operation municipal corporations subordinate to the State as well as the State in its corporate capacity? It has never been so understood. But if counties, cities, etc., are not embraced in the one, how can they be construed to be included in the other?

3. But admitting that the law under which the bonds were issued is unconstitutional, are the plaintiffs here entitled to the relief which they seek. The bonds were issued for the purpose of aiding the railroad company to whom they were issued in the building of their railroad, and it is fair to presume that the bonds have now passed into the hands of third parties who have purchased them in good faith for value. And if the court should declare the law unconstitutional, it is submitted that this would not affect the bonds already issued, if in the hands of third parties for value. 1 Wal., 206; 16 How., 432; 21 How., 539.

The opinion of the court was delivered by

VALENTINE, J.: The principal facts in this case, as shown by the pleadings, are as follows: On the 17th of January, 1871, the plaintiffs in the court below, who are plaintiffs here, filed in the clerk's office of the district court for Morris county their petition setting forth in substance that they were tax payers of said Morris county, and the owners respectively of certain described real and personal property therein, on which an assessment and levy of taxes had been made, by the proper officers of said county, for the year 1870, for the purpose of paying the interest on certain bonds issued by the board of county commissioners of said county to the Union Pacific Railway, Southern Branch, and to provide a sinking fund, etc.; that the said William F. Shamleffer as Treasurer of said county, and Jonathan Hammond as county clerk of said county, were respectively threatening to take certain steps to enforce the collection of the taxes assessed against the said property of plaintiffs for the payment of interest and sinking fund on said bonds. The petition sets out in full the record of the board of county commissioners of said county, upon which the issuance of said bonds was predicated, from which it appears, that on the 27th of May, 1867, a petition was presented to the said Board, signed by one-fourth of the legal voters of said county, praying that a special election be held for the purpose of deciding whether or not the county of Morris should take stock in the Union Pacific Railway, Southern Branch, to the amount of $165,-000, payable in thirty-year seven-per-cent. bonds of the county, upon certain conditions therein specified, a portion of which were, that work should be commenced on said road at or near Junction City within one year from

<small>Statement of facts, and pleadings.</small>

voting the bonds, and that the same should be completed to Council Grove in two years from the same time, and to the Lyon county line in six months thereafter; that the said board of commissioners did order said election, according to the prayer of said petition, and that the same was held on the 29th of June, 1867, and resulted in favor of said subscription; that on the 17th of April, 1869, the said railway company presented to the said board of commissioners a resolution of its board of directors, of date April 12th, 1869, requesting said board of commissioners to submit to the voters of said Morris county a proposition granting an extension of time of four months to said company to complete their road to Council Grove and through the county, and the bonds to be issued in thirty days after making the points specified; that thereupon the said board of commissioners did call a special election to be held on the 22d of May, 1869, to vote upon the following proposition: "Shall the time "within which the Union Pacific Railway, (Southern "Branch) Company were to complete their road to Coun- "cil Grove in said county, according to the conditions of "the vote taken in said county, on the 29th of June, "1867, be extended to the 1st day of November, 1869, "saving to the said company their right to the bonds "voted on the 29th of June, 1867, upon the following "additional conditions:" (Then followed certain con- "ditions immaterial to this proceeding, with this possible "exception: "The said bonds to be issued within thirty "days after the road is completed to the points specified "in the proposition voted upon the 29th of June, 1867;") that the said election resulted in favor of the proposition submitted; that on the 4th of October, 1869, the board of commissioners directed their chairman to "subscribe, for and on behalf of said Morris county, one hundred

and sixty-five thousand dollars of the capital stock" of said railway company, upon the conditions hereinbefore specified, and to issue, in connection with the county clerk, the bonds of said county to a like amount, payable in thirty years; that afterwards the said chairman did so subscribe, and issue the bonds, which action was on the 3d of January, 1870, approved by said board of county commissioners; that on the 5th of September, 1870, the said board of commissioners levied a tax of ten mills upon the property in said county for " railroad purposes," which said tax is the one the attempted collection of which is complained of. The petition further alleges that each of the steps taken which resulted in the issuance of said bonds, the levy of the tax, and the bonds themselves, are wholly void, and concludes with a prayer for a perpetual injunction restraining the said county officers, or either of them, from proceeding to collect said tax from plaintiffs. To this petition the defendants interposed a general demurrer, which was sustained. The district court denied the relief sought, and dismissed the plaintiffs' petition; to all of which plaintiffs excepted, and now bring their case here for review.

In this case counsel for plaintiffs in error raise or attempt to raise three questions:

*First:* They claim that the acts of the legislature under which said elections were had, stock subscribed, and bonds issued, were unconstitutional and void.

*Second:* They claim that the county commissioners had no authority to subscribe for said stock, or to issue said bonds except under the act of 1865 (ch. 12, p. 41,) and the amendatory act of 1866, (ch. 24, p. 72,) under which the first election was held; and that said acts were repealed before said stock was subscribed, or said bonds

Morris v. Morris County.

issued, and therefore they claim that said subscription and said bonds are void.

*Third:* They claim that the condition upon which the county commissioners were authorized to subscribe for said stock, and to issue said bonds, were not complied with by the railroad company, and therefore they claim. that said subscription and said bonds are void.

I. The first question was considered while we were examining the cases of the *Commissioners of Leavenworth County v. Miller*, (ante, p. 479,) and *The State ex rel. The Saint Joseph and Denver City Railroad Co. v. The Comm'rs of Nemaha County*, (ante, p. 542,) and was decided when we decided those cases. We think those acts are constitutional and valid. We shall therefore, without any further consideration of this question, proceed to the consideration of the other two questions.

1. Statutes authorizing aid to railroads are constitutional and valid.

II. The said acts of 1865 and 1866 have never been expressly repealed, and if they have ever been impliedly repealed, all rights, power and authority that had accrued under them, prior to their repeal, have, at least, been impliedly preserved. It is claimed that sections 1 and 2 of ch. 119, Gen. Stat., 1868, entitled, An act concerning the General Statutes, (pp. 1123 to 1128,) impliedly repeal said acts. If they do, then sections 6 and 8 of. said ch. 119, and the act entitled "An Act to authorize counties to issue bonds to railroad companies," passed by the same legislature, and approved February 25th, 1868, (Gen. Stat., 892,) have preserved all rights and powers that had accrued under said acts. Said section 6, ch. 119, provides that "The repeal of the acts and parts of acts revised and reenacted in the General Statutes aforesaid, or repugnant to the provisions thereof,

2. Acts of 1865, 1866, and 1868, relating to railroad bonds, considered and construed.

shall not * * * affect *any act done*, or *right accruing* or accrued," etc.  Said section 8 reads as follows :

" SEC. 8. The provisions of the General Statutes, so far as they are the same as those of prior laws, shall be *construed as a continuation of such laws*, and not as new enactments."

And section one of the said act " to authorize counties to issue bonds to railroad companies," (Gen. Stat., 892,) reads as follows :

" SEC. 1. Whenever a majority of the persons voting at any election called by the board of county commissioners of any county have heretofore voted in favor of subscribing stock and issuing bonds to any railroad company or companies, the board of county commissioners of such county may subscribe to the capital stock of such railroad company or companies, to the amount and on the conditions specified in the order of such board of county commissioners in such cases, and pay such subscriptions by issuing to each company bonds of such county, at par, payable at a time therein to be fixed, not exceeding thirty years from the date thereof, bearing interest at the rate of seven per cent. per annum, with interest coupons attached, whether such orders and elections, or either of them, have been in compliance with the statutes, in such cases made and provided, or not, or whether the proposition submitted at the election had, was for the subscription of stock and the issuance of bonds to one or more railroad companies."

These sections just quoted still remain upon the statute book unrepealed.  At the same  ession of the legislature at which these sections were enacted, another statute was enacted giving power to counties to subscribe for stock and issue bonds to railroad companies.  (Gen. Stat., 203, 204, §§ 51 to 54.)  This last mentioned statute was for the future, while the other statutes just quoted were to preserve intact all that had been done prior to that time. Whatever was done under the acts of 1865 and 1866, prior to the passage of the acts of 1868, continued in

force the same as though the said acts of 1868 had never been passed.

III. It is claimed that the conditions upon which the county commissioners were authorized to subscribe for said stock and to issue said bonds were not complied with

**3. Conditions fixed at one election may be changed by subsequent election.** that shows this. Counsel for plaintiffs in error nothing in the record brought to this court by the railroad company. Now there is have not under Rule 2 of the Rules of the Supreme Court referred us to anything that shows this, and upon examination we find nothing in the record that shows it. It does not conclusively follow that because the railroad company petitioned and the county voted to extend the time four months to the said company to complete their road to Council Grove, and through the county that the railroad company did not complete their road to Council Grove and through the county within the time prescribed by the first vote; and this is all that there is in the record that tends to prove that the railroad company did not comply with the conditions of the first vote. But we will suppose that the railroad company failed to complete their road to Council Grove, and through the county, for three or four months after the time prescribed by the first election, yet there is nothing to show that they did not so complete it within the time prescribed by the second election; and if so, that was sufficient. The second election was amendatory and supplemental to the first election, and changed the conditions prescribed by the first election just so far as the people intended to change such conditions. It seems to be admitted that the second election was held in all respects in accordance with the then existing law upon the subject, (ch. 29, laws of 1869, pp. 108, 109, 110,) except that it was an election to change certain conditions prescribed by a previous election, instead of

an original election to subscribe for stock and issue bonds to a railroad company. We think the second election was valid as a supplementary and amendatory election.

This is not a preceeding to determine whether bonds may be issued or not. The bonds have already been issued, and the county has the stock of the railroad company, which it has received in payment therefor. The county commissioners, the agents of the county, have determined that all the conditions upon which the bonds were to be issued have been complied with, and the bonds have in all probability gone into the hands of innocent and *bona fide* purchasers. A strong case must then be made out in order to invalidate the bonds. We are not aware that bonds in the hands of innocent and *bona fide* purchasers have ever been declared invalid because the officers whose duty it was to issue them, and whose duty it was to decide upon all preliminary facts, committed an error in deciding upon some facts. But upon this question we do not now desire to express any opinion. The judgment of the court below must be affirmed.

KINGMAN, C. J., concurring.

BREWER, J., dissenting upon the first proposition decided, and concurring with the court upon the other two propositions.