THE GARDEN CITY, GULF & NORTHERN RAILROAD COM-
PANY, *Plaintiff,* V. JAMES M. NATION, *as Auditor,
etc., Defendant.*

No. 16,988.

SYLLABUS BY THE COURT.

1. MUNICIPAL BONDS — *Aid of Railroads — Authority.* Section
7049 of the General Statutes of 1909 (Laws 1907, ch. 286,
§ 1) is not repugnant to section 8 of article 11 of the state
constitution.

2. —————— *Registration—Duty of Auditor of State.* It is the
duty of the auditor of state, upon presentation for that pur-
pose, to register and certify bonds issued under the above act
if he is satisfied that such bonds have been issued in accord-
ance with the provisions of the act and that the signatures
thereto of the officers signing the same are genuine.

3. —————— *Showing of Expenditures by Railroad Not a Prerequi-
site to Registration of Bonds.* As a prerequisite to register-
ing such bonds the auditor of state is not authorized to re-
quire a showing that the holder of the bonds has expended a
sum of money equal in amount to the face value of the bonds
for land to be used for right of way, depot grounds and ter-
minal facilities in the city which issued the bonds.

Original proceeding in mandamus. Opinion filed
April 9, 1910. Peremptory writ allowed.

*Albert Hoskinson, Edgar Roberts,* and *A. M. Harvey,*
for the plaintiff.

*Fred S. Jackson,* attorney-general, and *Charles D.
Shukers,* special assistant attorney-general, for the de-
fendant.

The opinion of the court was delivered by

SMITH, J.: This is an original action in mandamus
to require the state auditor to record in his office cer-
tain bonds of the city of Garden City in aid of the rail-
road company. The bonds purport to have been
issued under authority of chapter 286 of the Laws of
1907. (Gen. Stat. 1909, §§ 7049, 7053.) The bonds, ap-
parently issued in due form, were presented for regis-

tration to the state auditor, who refused the registry for the following reasons: (1) That chapter 286 of the Laws of 1907, and the acts supplemental thereto, are unconstitutional. (2) That there is no statute making it the duty of the auditor to register such bonds. (3) That the plaintiff has made no showing to the auditor that it has expended a sum of money equal to the face value of the bonds for land which is to be used for a right of way, depot grounds and terminal facilities in Garden City. It is contended on the one side that each of these objections is good, and upon the other that none of them is good. They will be considered in order.

(1) The defendant asks to reopen the question of the constitutionality of the statute authorizing cities and municipalities to issue bonds in aid of railroads. It is said that such cities and municipalities are but subordinate branches of the state government, and the state can not authorize such branches to do what the state itself can not do, viz., "be a party in carrying on any works of internal improvements." (Const., art. 11, § 8.) The whole question, it is practically conceded, was thrashed out in the opinion by Mr. Justice Valentine in *Leavenworth County v. Miller*, 7 Kan. 479, on one side thereof, and in the dissenting opinion of Mr. Justice Brewer in *The State, ex rel., v. Nemaha County*, 7 Kan. 542, on the other side. In the same volume is another decision, *Morris v. Morris County*, 7 Kan. 576, which reaffirms the two former decisions adverse to the very impressive argument of Mr. Justice Brewer. The statute under which these decisions were made is chapter 12 of the Laws of 1865, which provides in part:

"SECTION 1. That the board of county commissioners of any county, to, into, through, from, or near which, whether in this or any other state any railroad is or may be located, may subscribe to the capital stocks of any such railroad corporation, in the name and for the benefit of such county, not exceeding in amount the sum of three hundred thousand dollars in any one corporation, and may issue the bonds of such county, in such amounts as they may deem best, in payment for

Railroad Co. v. Nation.

said stocks: . . . But no such bonds shall be is-
sued until the question shall be first submitted to a vote
of the qualified electors of the county at some general
election, or at some special election to be called by the
board of county commissioners."

Omitting the provisions relating to the conditions un-
der which aid may be extended under the statute in
question in this case, section 7049 of the General Stat-
utes of 1909 (Laws 1907, ch. 286, § 1) provides:

"When a petition in writing, signed by at least two-
fifths of the resident taxpayers of any incorporated
city of the first or second class, shall be presented to the
mayor and council of such city, asking that a vote be
taken and an election held upon the question of aiding
any railroad company, whether operated by steam, elec-
tricity, or other motive power, constructing or propos-
ing to construct its line of railroad in or through said
city, in securing or paying for land for right of way,
depot grounds and terminal facilities, the mayor and
council of such city shall cause an election to be held
to determine whether such city shall aid such railroad
company in securing and paying for lands for the right
of way, depot grounds and terminal facilities; pro-
vided, that . . . no city of the second class shall
extend aid under this act to any railroad company to a
greater amount than twenty thousand dollars; pro-
vided, that aid shall not be extended to any railroad
under this act which has received aid from the same
city under any former act."

Section 7053 of the General Statutes of 1909 (Laws
1907, ch. 286, § 2) provides in part:

"If a majority of the qualified electors voting at such
election shall vote for extending such aid, the mayor
and council, for and in behalf of such city, shall cause
the bonds of such city, to the amount specified in such
petition, to be issued and delivered to such railroad
company. . . . Provided, that no such bonds shall
be issued until the railroad to which it is proposed to
extend aid for the purposes hereinbefore indicated shall
be completed and in operation through the city voting
in favor of such aid and the issuance of such bonds, or
to, from or between such points in such city as may be
specified in the proposition set forth in the petition re-
quired by this act."

It is virtually conceded in the argument that, if the legislature of the state may authorize a county to aid in the construction of a railroad, the legislature may also authorize a city to extend such aid. Nor is it contended that the statute authorizing a county to subscribe for bonds of a railroad company to aid it differs in principle from the statute authorizing cities to donate aid to the railroad company, probably because in effect the former results in a donation as effectually as does the latter provision. The question involved in this case is the same as the question involved in the cases previously cited. In the dissenting opinion of Mr. Justice Brewer in *The State, ex rel., v. Nemaha County,* 7 Kan. 542, he said:

"While I concede that the great weight of authorities —looking at it simply in the light of majorities—is with my brethren, yet there has ever been a vigorous and earnest dissenting. The question will not remain settled. Like Banquo's ghost, 'it will not down.' While the earlier cases do not discuss the question in the light of the principles upon which such legislative action must be based, there has been, ever since, great sheltering behind the accumulating authorities. 'Whatever is, is right,' is practically the idea upon which the late decisions rest. Because *so many* legislatures, *so many* executives, and *so many* courts have recognized this species of legislation, it must be valid. If that be the rule universally adopted, accumulating wrong will never be disturbed in its illegally acquired power.

"But it is said that this question has already been settled in this court, and the maxim *stare decisis* is invoked in its behalf. I recognize the binding obligation of that maxim, and if the question had once been fully considered and determined in this court, I should have no desire to reëxamine it." (Page 550.)

Nothing new has been added to the argument made by Mr. Justice Brewer in that decision, if indeed anything new can be added thereto, and after fully considering that learned protest this court decided that the statute was not in violation of section 8 of article 11 of the constitution of the state. The bar, the courts and

the people of the state, with practical unanimity, have accepted the construction of the constitutional provision thus made nearly forty years ago. Even in such cases as *C. K. & N. Rly. Co. v. City of Manhattan*, 45 Kan. 419, where a reverse construction would have been a complete defense, the question was not even suggested.

The defendant cites *The State v. Kelley*, 71 Kan. 811, and *City of Geneseo v. Gas Co.*, 55 Kan. 358, as authority for his contention that the statute is unconstitutional. There is so little analogy, however, in principle between those cases and the case at bar that it seems hardly necessary to distinguish them. In the case of *The State v. Kelley* the statute clearly authorized the state to be a "party in carrying on a work of internal improvement." (Syllabus.) In *City of Geneseo v. Gas Co.*, the statute involved was entitled "An act authorizing counties and unincorporated cities of the second and third class to encourage the development of the coal, natural gas and other resources of their localities by subscribing to the stock of companies organized for such purposes." (Syllabus.) In the opinion Mr. Justice Allen, after recognizing the validity of statutes authorizing cities to provide for lighting the streets and other public purposes, said:

"This corporation, however, seems to be formed for the purpose of carrying on the business of mining gas, coal, oil, salt and other minerals. It is not formed merely to supply a public need of the city, but contemplates carrying on a private business for profit. The main purpose of the corporation would seem to be to produce minerals for sale on the market at a profit. Cities are organized for public purposes, not to enter into private business ventures." (Page 361.)

Paraphrasing the language of Mr. Justice Brewer, we recognize the binding obligation of the maxim *stare decisis*, and since the question here involved has once been fully considered and determined in this court we have no desire to reëxamine it, but in accord with the former decisions of this court hold that section 7049 of

the General Statutes of 1909 (Laws 1907, ch. 286, § 1) is not repugnant to section 8 of article 11 of the state constitution.

In his brief the attorney-general indicates that millions of dollars have been paid or assumed in this state by reason of the decisions in *Leavenworth County v. Miller*, 7 Kan. 479, *The State, ex rel., v. Nemaha County*, 7 Kan. 542, and *Morris v. Morris County*, 7 Kan. 576. If so, presumably a large per cent of the bonds voted are still outstanding and unpaid. They were issued and negotiated in reliance upon the rule of property promulgated in these decisions, and this fact, if it be a fact, is a pertinent reason for maintaining the validity of the statute, rather than the reverse.

(2) As said by the defendant, the provisions of the statute relating to the recording of bonds by the auditor of state are somewhat vague and indefinite, but we think they may be fairly held to include bonds of the class in question, especially in view of the evident wisdom of the policy, in vogue for many years, to have such record in the auditor's office of all bonds issued, and when paid, by the municipalities of the state.

(3) The auditor declined to register the bonds because the plaintiff tendered him no proof that it had expended an amount of money equal to the face value of the bonds in securing and paying for lands for a right of way, depot grounds and terminal facilities. It is urged that it is the plain meaning of the language employed in the statute that bonds are to be issued only to aid in securing and paying for land to be used for the three specified purposes, to wit, "right of way," "depot grounds," and "terminal facilities." If this should be conceded, it does not follow that, as demanded, the purposes of the aid should all have been accomplished before the aid is extended. It is time to aid a drowning man when he is struggling in the water, not after he has got out on the bank. The only investigation the auditor is required or authorized to

make before registering or refusing to register the bonds when presented for that purpose is to ascertain whether the bonds were issued according to the provisions of section 7049 of the General Statutes of 1909 (Laws 1907, ch. 286, § 1), and whether the signatures thereto of the officers signing the same are genuine. (Laws 1874, ch. 39, § 6; Gen. Stat. 1909, § 581.) That the railroad company has secured or paid "for lands for right of way, depot grounds and terminal facilities" is not made a prerequisite to the voting, issuance or registration of bonds by the terms of the act.

The peremptory writ is allowed.