No. 30,370.

THE STATE OF KANSAS, ex rel. FREDERICK R. WHITE, as County Attorney of Wyandotte County, *Plaintiff*, v. THE CITY OF KANSAS CITY et al., *Defendants*.

(4 P. 2d 422.)

Opinion filed November 7, 1931.

*Roland Boynton*, attorney-general, *R. O. Mason*, assistant attorney-general, *Frederick R. White*, county attorney, and *Lee E. Weeks*, assistant county attorney, for the plaintiff; *Arthur J. Mellott* and *Joseph A. Lynch*, both of Kansas City, of counsel.

L. S. Harvey, Alton H. Skinner, John C. O'Brien, all of Kansas City, Powell C. Groner and John R. Moberly, both of Kansas City, Mo., for the defendants.

C. W. Trickett, of Kansas City, as amicus curiæ.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an original proceeding brought in the name of the state by Frederick R. White, as county attorney, against the city of Kansas City, the mayor and commissioners of the city, and the Wyandotte Railways Company, to test the validity of chapter 128 of the Laws of 1931, being—

"An act relating to cities of the first class of 120,000 population or more located in counties having a population of more than 140,000 inhabitants, providing for the reconstruction of street railway tracks, and repaving in connection therewith, on main arterial highways, and providing for the assessment of the cost thereof."

The principal grounds upon which plaintiff contends that the act is invalid are that it authorizes the loan of the credit of the city for what must be regarded as a private purpose; second, that the assessments for the building of the track and the paving of the street are made a first lien on the franchises and property of the railway company, and is therefore a violation of the provisions forbidding the impairment of the obligations of a contract.

In the petition for quo warranto the plaintiff in substance alleges that the city is one of the first class, having a population of more than 120,000 in a county of more than 140,000; that the Wyandotte Railways Company is a duly organized corporation, authorized to own, operate and maintain street railways, and that it owns tracks on Kansas avenue, a traffic way of the city, but at present has no franchise from the city for operation, but by sufferance it has operated the line in order to furnish service to the public; that service is furnished under an arrangement with the Kansas City Public Service Company so as to provide continuous service with the lines of the latter company in Kansas City, Mo. That the Wyandotte Railways Company is mortgaged to the extent of $1,750,000, bearing interest at six per cent, the mortgage being dated July 1, 1926. It is alleged that the city had passed ordinances declaring the avenue in question to be a main arterial traffic way and had improved it at great expense, so as to accommodate heavy traffic and

had legally requested the railways company to reconstruct the tracks, which it declined to do, saying that it was not in a condition to comply with the order, and offering to coöperate with the city in reconstructing the track on a plan that was subsequently adopted. The act in question was passed by the legislature in 1931, and the city adopted an ordinance providing for the construction of the railway track and eighteen inches beyond the outer rails as a public improvement, and for the issuance of general improvement bonds of the city, one-half of the cost to be assessed to the railways company, payable in ten equal installments and to be a first lien upon the property and franchise of the company. That the city commission then directed the city engineer to prepare plans and specifications for the work, which should be up to the standards of the railways company in heavy traffic thoroughfares; that these were made and approved by the governing body of the city. The city then advertised for bids for the work, and a sealed proposal was made by the railways company which was the only bid made. This was accepted by the city, it being less than the estimate of the city engineer. The railways company filed the required statutory bond for the faithful performance of the contract. It was further alleged that the city proposed to issue and sell the general improvement bonds, which would be a general liability of the city, and the railways company proposed to proceed with the making of the improvement and to collect from the city the contract cost of the work. These things, it is alleged, have been done and proposed to be done under the authority of the statute questioned which, it is said, is unconstitutional for the reasons stated, and also that it was invalid on the ground that it was a special act. Plaintiff therefore asks that the city be ousted from the authority assumed by it in respect to the contract made, and that the railways company be ousted from exercising any authority under the contract.

The answer of the city admits most of the averments of the petition relating to the organization and relation of the parties, the location and condition of the avenue, and the heavy traffic on the same. It also admits the poor condition of the tracks and the previous refusal of the railways company to make improvements demanded by the city because of financial disability. It also admits that the city commission had acted under the questioned statutes providing for the improvement, and the making of the contract for

the improvement and the purpose of the city to issue improvement bonds under the authority of the questioned statute are admitted.

The city alleges that the railways company is a common carrier and that service on its line is necessary for the convenience, safety and public welfare of the people of the city, that the company has property of the assessed value of $1,657,149, and that it payes taxes of about the amount of $75,327.40 per annum. It alleges that the street is a part of a main arterial traffic way and the use of the street is so extensive and continuous that the full width of the street is necessary to accommodate the traffic. It further alleges that it has acted under the Laws of 1931, which is a valid exercise of power of the legislature, and that the action taken in the premises in contracting for the work was for a public improvement for which the city had the power to levy special assessments and general taxes to pay the bonds to be issued. The answer of the railways company was substantially the same as that filed by the city, and it added that its inability to reconstruct the tracks and maintain them was that the line had been operated at a loss ever since it became the owner of the property, and that it was without funds to reconstruct the tracks, and for that reason declined to comply with the demands of the city to do so, and that under the conditions prevailing and the unprofitable operation of the line it had prepared to abandon the same and discontinue the services thereon, and that the city was insisting that service on the line should be continued and it was continued upon a day-to-day basis.

The petition and answers disclose that there are no matters of fact in dispute between the parties and that only the validity of chapter 128 of the Laws of 1931 is submitted for determination. One of the principal objections to the act is that it authorizes a loan of the credit of the city for carrying out a private purpose. It is granted that a municipality has no authority to loan its credit or issue its bonds to promote a private purpose. Can it be said that an act authorizing cities to aid in the building or reconstruction of a street railway is for a private purpose? The street railroad is a means of public transportation. It is a public utility to carry passengers and property at rates which are fixed by the public service commission, which exercises the same control and regulations as are exercised over steam railroads, operating through cities and on across the open country, propelled by steam, electricity or gasoline power. At an

early day it was decided that it was competent for the legislature to authorize municipalities to grant aid for the construction of railroads, on the theory that the transportation of passengers and freight for the public is a public purpose although operated by a private agency which was subject to the regulations and control of the state. (*Leavenworth County v. Miller*, 7 Kan. 479.) In the cited case there is an elaborate discussion of the questions as to the nature and purpose of a railroad and the right of municipalities to extend aid to railroads for that purpose, which we think has conclusively settled the question that it was a public purpose and within the legislative power. The case was decided in 1871, and the doctrine has been approved and applied repeatedly since that time. (See *Railroad Co. v. Nation*, 82 Kan. 345, 108 Pac. 102, and cases cited.) The legislature has since authorized the granting of aid and the methods of extending it in an elaborate article of 97 sections. (R. S. 66-1001 to 66-1097.) A street railroad is built and used for a public purpose (*City of Emporia v. Street Railway Co.*, 92 Kan. 232, 139 Pac. 1185) and no reason is seen why the principles announced in the Miller case are not equally applicable to street railroads, and further that they apply as well to reconstruction of an improvement as to the original construction. It must be held, therefore, that the proposed construction of the street railroad on a main arterial traffic way of the city for the convenience and safety of the public is for the promotion of a public purpose, and in that respect the provision for the improvement is within legislative power.

Another objection to the act is that part of the cost of the improvement shall be assessed against the railways company and shall constitute a first lien upon all of its property and franchises. A provision of the act is:

"That the cost of such reconstruction shall be assessed against such street railway company and shall constitute a first lien upon all of its property and franchises in the city, and shall be repaid by said street railway company in not to exceed ten (10) equal annual installments, with interest at not to exceed eight (8) per cent per annum upon deferred installments. That at the time of any such reconstruction of track pursuant to the provisions of this act, the city shall cause the space between the tracks and for a distance of eighteen (18) inches beyond each outer rail to be repaved, and may assess up to one-half of the cost thereof against such company. That the company shall repay to the city said cost for repaving in ten (10) equal annual installments, with interest on deferred payments not to exceed eight (8) per cent per annum, and make same a first lien upon its said property and franchises as hereinbefore

provided for the reconstruction of track, and the balance shall be paid for by the city at large out of the general improvement fund, or the governing body of such city may issue general improvement bonds therefor."

No bond or mortgage holders were made parties to this action, and hence no one other than the state is questioning the right to make the cost of the local improvement a first lien, but it may be assumed that the state, through the county attorney, may raise the question that the act operates to impair the obligations of existing contracts and in consequence is invalid. The improvement is made on a much-used street of the city and is a part of it. It was the duty of the city to make and keep the street in a safe condition for public travel. Because of the bad condition of the tracks on the street and the inability of the railways company to repair and make it safe the city itself, under the authority of the state, has undertaken to reconstruct the railroad and make it and the streets safe for use under the plan provided in the act. Payment for the improvement is to be met by special assessments and general taxation in which bonds payable in installments at future specified times are authorized to be issued to accomplish the immediate improvement of the street. Taxes and special assessments are paramount and take precedence over every other lien, prior and subsequent, where the legislature provides that these liens shall have precedence. (37 Cyc. 1143.) In *Baldwin v. Moroney,* 173 Ind. 574, it was held that the making of special assessments for drainage purposes is an exercise of the power of taxation, and that a statute providing for an assessment levied without notice to the mortgagees does not deprive them of their property without due process of law nor impair the obligations of the mortgage contracts. In 30 L. R. A., n. s., 761, there is appended to that case an extensive annotation with scores of cases sustaining the priority. In one of the notes it is said:

"Both taxes and special assessments for local improvements are levied under the sovereign power of the state, and under the theory that they are for the general good. The same means may be given for their enforcement. As, therefore, the legislature has the constitutional power to declare that taxes shall be a lien on land prior to all other liens, so it has the power to declare that special assessments shall be a lien prior to all other liens of a private nature, even though they may have attached before the assessment was made." (p. 762.)

In *Storrie v. Street Railway Co.,* 92 Tex. 129, a street-car company was required to pave the street between the rails of its track and six inches on each side of the rails. This not being done, the city

entered into a contract for the doing of the work and when done claimed a lien on the property and franchises of the company for the cost of the improvement. A mortgage had before been given to a trust company on the street-car line. A controversy arose as to the priority of the lien of the city for the cost of improvement against the earlier lien of the trust company. It was held that the legislature may constitutionally make the property of the street-car company liable to a lien for paving between the tracks and to make such liens superior to that of the trust company given prior to the enactment of the statute. In *Sioux City Street Ry. Co. v. City of Sioux City*, 78 Ia. 367, the railway company had been authorized to occupy certain streets for its railroad upon certain conditions, one of which was that the company should pave between its tracks. This was done, and subsequently the legislature passed an act providing that railroads might be required to pave not only between the tracks but also one foot outside of the rails. An assessment was made against the company and its property for the additional paving. The company resisted and insisted that the assessment was beyond the power of the state and the city in that it impaired a preëxisting contract with the company, but the contention was denied, the court holding that the added burden might be imposed. This case was appealed to the United States supreme court, where it was affirmed. That court, among other things, said:

"No question can arise as to the impairment of the obligation of a contract, when the company accepted all of its corporate powers subject to the reserved power of the state to modify its charter and to impose additional burdens upon the enjoyment of its franchise. Under the act of March 15, 1884, it was made a condition of the enjoyment of its franchise by the company that, when the city should determine that the streets should be paved, the company should bear a certain portion of the cost thereof; and any prior contract between the company and the city in regard to paving was subject to the provisions of section 1090 of the code. There was nothing in the ordinance of December 12, 1883, which bound or could bind the city not to exercise its statutory authority to impose other conditions upon the exercise of the rights of the company.

"Our conclusion, therefore, is that there was no contract between the company and the state or the city, the obligation of which was impaired by the laying of the tax in question." (*Sioux City St. Ry. Co. v. Sioux City*, 138 U. S. 98, 108.)

We conclude that the contention of the plaintiff that the act impairs the obligation of a contract, and is therefore void, cannot be sustained.

The provision that the improvement is to be made in conformity with the standards and specifications of the street railway system and to the satisfaction of the city engineer and the engineer of the railway company is questioned, on the ground that the company engineer is not a public officer. The work is to be done to the satisfaction of the city engineer, and that is coupled with the provision that no payments shall be made for the work until it has been approved by the city engineer and accepted by the governing body of the city. The inclusion of the engineer of the company was probably to aid in making the improved road conform with the standards of the railway system of which it was to form and be operated as a part. The objection cannot be regarded as a ground for overthrowing the act.

There is a contention, too, that the act is special in character, but in view of the numerous decisions on classifications of cities and other municipalities in legislation that objection is without merit. Nor can the objection be upheld that the act is in violation of section 1 of article 12, or sections 16 and 17 of article 2 of the constitution.

It follows that the ouster asked by plaintiff must be denied and that judgment must go for defendants. It is so ordered.

BURCH, J., dissenting.

HARVEY, J., not sitting.