[No. 24943. *En Banc.* May 24, 1934.]

THE CITY OF TACOMA, *Respondent,* v. THE STATE TAX COMMISSION *et al., Appellants,* THE CITY OF SEATTLE, *Respondent.*[1]

[1]Reported in 33 P. (2d) 899.

*The Attorney General* and *John W. Hanna, Assistant,* for appellants.

*W. W. Mount, John E. Gallagher, Bartlett Rummel,* and *L. L. Thompson,* for respondent City of Tacoma.

*A. C. Van Soelen, Walter L. Baumgartner,* and *Charles V. Hoard,* for respondent City of Seattle.

*J. Y. Kennedy, S. J. Brooks, Lester T. Parker,* and *Yantis & Brodie, amici curiae.*

Beals, C. J.—This action was instituted by the city of Tacoma, a municipal corporation, for the purpose of procuring a decree permanently enjoining the tax commission of the state of Washington and defendants Hedges and Jenner, as members thereof, from enforcing the provisions of chapter 191, Laws of 1933, p. 869, Rem. 1933 Sup., § 8326-1 *et seq.*, as against the plaintiff.

The city of Seattle, a municipal corporation, filed its complaint in intervention seeking the same relief as that demanded by the city of Tacoma.

To plaintiff's second amended complaint and to intervener's amended complaint, defendants demurred. These demurrers were by the trial court overruled, and defendants having elected to stand thereon, a decree was entered permanently enjoining defendants from enforcing the act above referred to as against plaintiff and intervener. From this decree, defendants have appealed to this court.

The two municipal corporations will be referred to jointly as respondents.

The title to chapter 191, Session Laws of 1933, p. 869, reads as follows:

"An act relating to taxation; imposing taxes upon the privilege of engaging in business activities and providing for the ascertainment, assessment, collection and distribution thereof; providing for the administration and enforcement of this act; providing penalties; making appropriations; and declaring that this act shall take effect immediately."

The following portions of the statute are to be considered in determining the questions here presented:

"(2) From and after the first day of August, 1933, and until the thirty-first day of July, 1935, there is hereby levied and there shall be collected from every person an annual tax or excise for the privilege of engaging in business activities. Such tax or excise shall

be measured by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, as follows: . . .

"(e) Upon every person engaging or continuing within this state in the following businesses; as to such persons the amount of tax or excise shall be equal to the gross income of the business multiplied by the rate set out after the business, as follows: . . .

"IV. Electric interurban railways, street railways, and all automotive transportation systems operating entirely within the limits of any city or town or contiguous cities or towns: five-tenths of one per cent;

"V. Light and power companies: three per cent; . . .

"VII. Water companies, except, however, irrigation companies and district: three per cent; . . .

"The terms of this subdivision shall apply with equal force to any municipal corporation or district engaging in any of the business activities herein mentioned: *Provided, however,* That moneys received from tax sources shall not be included in computing the gross proceeds of sales or gross income upon which such tax shall be based. This paragraph shall be so interpreted as to give effect to the intent of this act which is declared to be to impose upon municipally owned and/or operated utilities and businesses coming within the purview of this subdivision an excise at the same rate as is herein imposed upon privately owned utilities or businesses of the same type." Rem. 1933 Sup., § 8326-2.

From their complaints, it appears that respondents own and operate certain public utilities, consisting of street railways, light and power plants, water systems, etc. Respondents contend that the act is unconstitutional and void in so far as it purports to provide for the levy and collection of taxes from municipally owned and operated public utilities, for the reason that it is in conflict with Article I, § 10, of the constitution of the United States, which, among other things, prohibits the enactment by a state of any law impairing

the obligations of contracts; and also, with § 1 of the fourteenth amendment to the constitution, prohibiting the making or enforcement of any state statute depriving any person of his property without due process of law, or denying to any person the equal protection of the laws.

Respondents also contend that, as to them, the act violates the following portions of our state constitution:

Art. I, § 23, which prohibits the passage of any "ex post facto law, or law impairing the obligations of contracts;" and

Art. III, § 12, vesting the governor with a certain veto power; and the seventh amendment to the state constitution, known as the "initiative and referendum amendment."

Questions concerning the constitutionality of the act here under attack, in so far as certain provisions thereof were concerned, were presented in the case of *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91, in which proceeding the act was held good and not in violation of either the Federal or state constitutions. The main question here presented was not, however, before the court in the case cited.

The act as originally passed by the legislature contained a section, number 2½, which section was vetoed by the governor. Respondents argue here that the governor's veto of this section must be held ineffective and void; and that, this being true, certain consequences favorable to respondents necessarily follow.

The question of the effect of the governor's veto of section 2½ was considered by this court in the case of *Cascade Telephone Co. v. State Tax Commission,* 176 Wash. 616, 30 P. (2d) 976, it being there held that

the veto was a valid exercise of the executive preroga-
tive. That phase of the case has therefore been deter-
mined contrary to respondents' contention. The his-
tory of the act and all matters in connection with the
governor's veto of section 2½ are fully discussed in
the cases cited, to which reference is hereby made.

 Respondents next contend that, as the revenues
of the public utilities owned and operated by the cities
upon which the tax is sought to be levied have long
since been lawfully pledged for the payment of reve-
nue bonds and interest thereon, the act impairs the
obligation of respondents' contracts with the holders
of these bonds, and is therefore unconstitutional and
void.

At the outset of the discussion of this phase of the
case, we assume that respondents, as trustees of the
revenues arising from the operation of the utilities
concerned, may maintain this action to preserve the
fund, consisting of such revenues, for the benefit of all
persons interested. No bond holder is a party to this
action, the same being maintained only by the cities in
their alleged capacity as trustees.

By virtue of the provisions of Rem. Rev. Stat.,
§ 9488 et seq., respondents were authorized to acquire
or construct and operate such utilities, and the issu-
ance of bonds for utility purposes was provided for.

It is admitted herein that respondents have out-
standing bonds against their public utilities in large
amounts which are held by many different individuals.
Under the law, these bonds are obligations only against
the special funds referred to respectively therein.

The appeal herein being from a decree entered upon
overruling demurrers, it must be taken as admitted
that certain of the utilities conducted by respondents

do not produce sufficient revenue to pay maintenance, operating expenses and interest on bonds.

Respondents earnestly contend that, under the statutes authorizing the issuance of the bonds and the municipal ordinances setting up the utilities and creating the obligations, the entire gross revenues arising from the operation of the respective utilities have lawfully been pledged to the payment in full of the utility bonds now outstanding; and that, consequently, the statute here under attack, by providing for the levy of a tax, by way of an excise, upon these revenues, impairs the lawful obligation of respondents' contracts with the bond holders, and must therefore be held unconstitutional and void.

In considering the questions here presented, it may be assumed, as a general principle, that the holders of the respective utility bonds have, under the law, no claim against the general revenues of the municipality; nor can they demand payment of their respective bonds out of any revenues save those arising from the particular utility in connection with which their bonds were issued.

In the case of *Schooley v. Chehalis*, 84 Wash. 667, 147 Pac. 410, this court, referring to the duty of the city to establish and maintain rates sufficient to insure a revenue ample to maintain the system and provide for the bond payment, said:

"We will not presume that the city will not perform this duty by fixing such rates as will enable it to maintain the plant from the revenues of the system itself, and also pay the principal and interest of the bonds as provided by the ordinance."

In the cases of *Uhler v. Olympia*, 87 Wash. 1, 151 Pac. 117; 152 Pac. 998, and *Asia v. Seattle*, 119 Wash. 674, 206 Pac. 366, the lack of authority on the part of the municipality to expend from its general fund

money for the benefit of a special utility fund was discussed; the right to make temporary loans from one fund to another having been considered in the case of *Von Herberg v. Seattle*, 157 Wash. 141, 288 Pac. 646.

The respondents here may, under the law, fix the rates which their patrons must pay, unhampered by any supervision or control on the part of the department of public works. The utilities which respondents own and operate belong to their people, and are conducted for the benefit of the people, and not for profit in the ordinary sense. The dividends which the owners receive are paid by way of better service at less cost. These activities are conducted by respondents in their proprietary capacity, not as governmental agencies. Municipal corporations carry on these activities by virtue of authority expressly or impliedly granted by the state. 43 C. J. 420; 19 R. C. L. 788. The right to borrow money for the purpose of establishing such public utilities and to issue bonds to secure the same is conferred upon respondents by statute. Rem. Rev. Stat., § 9488 *et seq.*, above referred to.

The power to tax is the basic principle upon which government is founded. Without that right, no government worthy of the name can long exist. The lack of power to tax was one of the main causes of the complete breakdown of the association which the thirteen colonies attempted to establish by virtue of the articles of confederation, and rendered necessary the "more perfect union" which was formed under the constitution. The right to tax underlies and adheres in all of our legislative enactments. We are not here concerned with an express limitation or waiver of the power to tax, but only what respondents argue should be held to be an implied contract on the part of the state, by virtue of which and because of the rights of the holders of

the utility bonds issued by respondents, the state cannot levy an excise which affects the proprietary operations conducted by respondents.

It seems clear that the state has not lost its power to tax unless there can be no doubt but what the situation presented requires such a holding. Every presumption is in favor of the reservation by the state of the complete exercise of this fundamental right.

The supreme court of the United States, in the case of *Chicago Theological Seminary v. Illinois,* 188 U. S. 662 (p. 672), 23 S. Ct. 386, said:

"The rule is that, in claims for exemption from taxation under legislative authority, the exemption must be plainly and unmistakably granted; it cannot exist by implication only; a doubt is fatal to the claim."

The same court, in the case of *Great Northern Railway v. Minnesota,* 216 U. S. 206, 221, 30 S. Ct. 344, referring to the same general proposition, laid down the following rule:

"The state court recognized the doctrine as firmly established that a legislature, unless restrained by state constitutional provisions, may contract to limit its power of taxation. But it held that, as taxation was essential to the existence and operations of government, an exemption from taxes cannot be presumed from doubtful language but must be expressed in words so clear and explicit as to leave no reasonable doubt that the exemption was intended to be given. And such is the settled rule announced by this court in cases familiar to counsel and too numerous to be cited."

By the fourteenth amendment to the constitution of our state (approved November, 1930), Art. VII thereof was amended, § 1, as amended, commencing with the sentence: "The power of taxation shall never be suspended, surrendered or contracted away."

This express and specific declaration of a great governmental principle is important as embodying the will of the people, although we decide the questions here presented upon the law as it existed prior to the adoption of the amendment.

In the case of *Everett v. Adamson,* 106 Wash. 355, 180 Pac. 144, this court considered the effect of chapter 98, Laws of 1911, p. 467, which, *inter alia,* provided that, before instituting foreclosure of certificates of delinquency for general taxes, local improvement assessments against the property covered by the certificates must be paid. The owner of a certificate of delinquency, issued prior to the enactment of the law of 1911, maintained that, under the law, he could foreclose the same without complying with the terms of the later statute. He argued that his certificate gave him a vested right which the state could not later alter by imposing upon him an additional burden. This court, in the course of its opinion in holding the act of 1911 effective, said:

"Respondent's position is postulated almost entirely upon the theory of contractual relationship.

"We cannot concede that contract is analogous to a proposition of this kind. To do so would be to invite a serious curtailment of the sovereign power of taxation—that power which is one of the supreme powers of the state. If we were to hold that the principle of contract applied in one instance in the field of taxation, we would logically be compelled to extend the whole of the principles of contract to the entire field of taxation. We have held consistently that taxation is a matter involving the sovereign power of the state and subject only to the limitations which that sovereignty has imposed upon itself, either in the constitutional or positive law of the state. To read into the operations of the tax laws the particular principles which form the accretion of judicial precedent in matters of individual relationship and of contract would

be an unwarranted invasion of the legislative power. The power to tax includes the power to retax and impose other burdens of taxation upon the same subjects of taxation, at the will of the supreme taxing power. The power to levy special assessments for public improvements, according to the benefits, is delegated to the local authorities, but is wholly derived from the sovereign taxing power, and could assuredly be exercised in the first instance by it. . . .

"This court cannot hold that the statutes which make the payment of general tax liens a condition precedent to foreclosing certificates of delinquency by implication prohibit the legislature from subsequently imposing upon such certificates, even when issued prior to such legislative action, subsequent valid local improvement assessments. To do so would be to allow any given act of the legislature at one time to indefinitely limit the future taxing power of the state.

"The judgment must be and is reversed."

The supreme court of the United States, in the case of *People ex rel. Metropolitan Street Railway Co. v. New York State Board,* 199 U. S. 1, 38, 25 S. Ct. 705, in upholding the right of the state to levy a tax, used the following language:

"There is no implied covenant that property sold by the State cannot be taxed by the State, which can even tax its own bonds, given to borrow money for its own use, unless they contain an express stipulation of exemption. The rule of strict construction applies to state grants, and unless there is an express stipulation not to tax, the right is reserved as an attribute of sovereignty."

It is, of course, well settled that a municipality cannot contract away the taxing power of the state. 1 Cooley on Taxation (4th ed.), 318, § 136.

If the right of the state to tax has, in this instance, been lost, that result can only have come about because of the act of the state itself, and not by reason of the acts of any subdivision thereof.

The supreme court of Oregon, in the case of *Portland v. Portland Railway, Light & Power Co.*, 80 Ore. 271, 156 Pac. 1058, used the following language:

"The defendant is not denied the equal protection of the law merely because it has made contracts to furnish electricity at prescribed rates and the tax will diminish the profits of those contracts. Section 1 of the Fourteenth Amendment to the federal Constitution is not violated. Contracts must always be entered into with full knowledge that the government may at any time draw upon its extensive powers of taxation; and when the company made contracts to furnish light it did so subject to the right of the municipality to exercise its taxing power in all its fullness: 8 Cyc. 997.

"Nor are the obligations of contracts impaired, and Article I of Section 10 of the national Constitution is not violated, by the collection of taxes which are imposed by a law passed subsequent to the making of a contract. The ordinance does not strike at the terms of the contracts; the agreements are preserved, and are enforceable now the same as before by both parties; the obligation of the contracts still binds to the same extent as before the passage of the ordinance, and there is no impairment of any obligations."

In the case of *State ex rel. Sedalia v. Weinrich*, 291 Mo. 461, 236 S. W. 872, the supreme court of Missouri said:

"Whatever rights, if any, accrued, accrued subject to the power of the Legislature to amend the law. The fact that the city incurred a lawful indebtedness under one levy could not estop the Legislature to exercise its constitutional power to reduce the levy. The debt was incurred with full knowledge of the fact that the Legislature could make the change and, in fact, the possibility of such a change was an incident of the contract since the applicable law became a part of it."

The proposition that persons, in dealing with the state or its subdivisions, do so in contemplation of the state's power to tax, is also supported by the follow-

ing authorities: *Lake Superior Mines v. Lord,* 271 U. S. 577, 70 L. Ed. 1093, 46 S. Ct. 627; *Pacific Co., Ltd., v. Johnson,* 285 U. S. 480, 76 L. Ed. 893; *Rochester v. Rochester R. Co.,* 182 N. Y. 99, 74 N. E. 953; *Sioux City Street Ry. Co. v. Sioux City,* 138 U. S. 98, 44 L. Ed. 898, 11 S. Ct. 226; *State ex rel. White v. Kansas City,* 134 Kans. 157, 4 P. (2d) 422, 78 A. L. R. 507.

This court, in the case of *Puget Sound Power & Light Co. v. Seattle,* 172 Wash. 668, 21 P. (2d) 727 (affirmed by the supreme court of the United States, 54 Sup. Ct. 542, 712), upheld the validity of an ordinance of the city of Seattle imposing an occupation tax or excise upon the carrying on of certain businesses within the city. Respondents rely upon certain language contained in this opinion, but the same must be construed in connection with the questions therein decided, and we find nothing in the opinion which is here controlling.

It is also argued on behalf of respondents that the statute in question contravenes § 2, Art. VII, of the state constitution, exempting from taxation the property of municipal corporations; and that the utilities of the cities referred to in the complaints herein, such as water systems, street railways, light and power plants, etc., are not business activities within the meaning of the act now before us; and that, for these reasons, if for no others, the decree appealed from should be affirmed.

This court has held that the act in question provides for the collection of an excise tax. *State ex rel. Stiner v. Yelle, supra.* The utilities operated by respondents are businesses within the definition of that word contained in the statute, being conducted "with the object of gain, benefit or advantage either direct or indirect," and the legislature has the same right to levy an excise

upon such activities when maintained by municipal corporations as it has in cases where the same rest in private ownership. The act does not attempt to tax property which the constitution declares to be exempt, and the operations referred to in the complaints herein, when conducted by municipal corporations, fall directly within its terms.

Respondents strenuously argue that, under the law, the utility bonds were issued under the pledge that interest thereon was a first lien upon the entire gross revenue. By the excise now before us, it is manifest that a certain portion of the revenues must be diverted to the state under the terms of the statute. Our view of the law governing this case makes it unnecessary to determine whether or not maintenance and operation expense constitute a charge prior to bond interest. In any event, the tax levied by the state infringes upon no right of the bond holders, which is the only question to be here determined.

The act, as appears from the portion thereof above quoted, is, according to its terms, effective only from August 1, 1933, to July 31, 1935. This may or may not indicate that the legislature considered the act emergent only. Whether temporary or as a method to be permanently followed in raising revenue, we consider the act a valid exercise of the taxing power of the legislature, without regard to any existing emergency or the limitation fixed in the law for its operation.

In some of the briefs filed in support of respondents' position, considerable argument is set forth by way of an attack upon the policy of the act here in question. Such arguments might with propriety be directed to the legislature, but are not pertinent to judicial inquiry.

Many authorities are cited by respondents in sup-

port of their arguments for the affirmance of the decree in their favor rendered by the superior court. We have carefully examined these authorities, but a detailed discussion thereof would unreasonably extend this opinion to no good purpose. We are satisfied that the question must be determined according to the principles laid down in the authorities above referred to.

The decree appealed from is reversed, with instructions to the trial court to sustain appellants' demurrers to respondents' complaints.

TOLMAN, HOLCOMB, MAIN, BLAKE, and GERAGHTY, JJ., concur.

STEINERT, J. (concurring in the result)—I concur in the result of the majority opinion, but am not in accord with what is said with respect to the governor's veto of § 2½ of the act. My view upon that phase of the matter is set forth in the dissenting opinion in *Cascade Telephone Co. v. Tax Commission,* 176 Wash. 616, 30 P. (2d) 976. I still adhere to that view.

MITCHELL, J., concurs with STEINERT, J.

MILLARD, J. (dissenting)—I dissent.

The property of municipal corporations is exempted, by Art. VII of the constitution, from taxation. By reason of that constitutional provision, it is not within the power of the legislature to levy a direct tax on the property itself. It logically follows that the legislature is without power to tax the right to use the property or to tax the method utilized by the municipal corporation in acquiring the property.

The bonds issued for the purpose of obtaining funds for the construction and maintenance of the municipal utilities were authorized by statute. The revenues derived from the operation of the utilities are pledged for the payment of those bonds and the interest there-

on. The revenues from the utilities are placed, as the statute requires, in a special fund created for that purpose. The municipal corporation becomes a trustee for that fund for the purpose of paying the bonds. The state may not impair that bonded obligation by diversion of the pledged funds for tax purposes or for any other purpose.

I am still of the view expressed in the minority opinion in *Cascade Telephone Co. v. Tax Commission*, 176 Wash. 616, 30 P. (2d) 976, that the governor's veto of § 2½ was void.

