[No. 25926. *En Banc.* November 13, 1935.]

VANCE LUMBER COMPANY, *Respondent,* v. KING COUNTY et al., *Appellants.*[1]

[1]Reported in 51 P. (2d) 623.

*Warren G. Magnuson, Wm. Hickman Moore,* and *Edwin C. Ewing,* for appellants.

*W. H. Abel,* for respondent.

*The Attorney General, Geo. G. Hannan, Assistant,* and *J. W. Robinson, amici curiae.*

TOLMAN, J.—Respondent, as plaintiff, instituted this action to recover a sum certain which had been paid by it to the county treasurer of King county, under protest, in satisfaction and discharge of taxes on real estate in that county for the years 1931 and 1932. It appears from the complaint that the respondent first tendered to the county treasurer the sum due, less five per cent thereof, pursuant to the provisions of chapter 166, Laws of 1935, p. 553, Rem. 1935 Sup., § 11273-1B [P. C. § 6882-138½a] *et seq.,* and, the tender being refused by the county treasurer, the whole of the tax was paid under protest, and this action was thereupon instituted to recover back from the county the sum of $1,001.69 overpaid by reason of the refusal of the treasurer to allow the discount provided for in the act of 1935, *supra.*

To the complaint, a demurrer was interposed. In addition to the allegations of the complaint, certain facts were stipulated and agreed upon, with the understanding that, in the event of an adverse ruling, the defendants would stand upon their demurrer. The cause was thus submitted upon the complaint and upon the stipulated facts, and after arguments and consideration, the demurrer was overruled. The defendants declined

to plead further, and a judgment against the county for the amount demanded was entered in due course. From that judgment, the defendants have appealed.

Section 1 of chapter 166, Laws of 1935, p. 553, Rem. 1935 Sup., § 11273-1B [P. C. § 6882-138½a], provides for the remission of interest on delinquent taxes for the year 1932 and prior years and, in addition, for an allowance or rebate of five per cent of the principal of any such tax "to all persons paying all of any year or years of said delinquent taxes on or before November 30, 1935."

The facts pleaded and admitted bring the respondent within the terms of the statute. The defense below and here is that the statute is unconstitutional.

The appellant first cites § 12 of Art. I of our state constitution, which forbids special privileges and immunities, and the fourteenth amendment to the Federal constitution, which is to the same effect. Under these constitutional provisions, it is argued that those taxpayers who have paid their taxes in full are prejudiced and damaged by the acquittance to others of five per cent and that a premium is thus placed upon delinquency; that those who have paid in full must, in the future, pay an additional amount in order to make up the loss occasioned by the allowance of the discount.

This argument, we think, assumes facts not shown by the record before us and, perhaps, not susceptible of proof. That is to say that, by this argument, it is assumed that, had the act in question never become law, all taxes would have been paid in full. Perhaps no one knows or can know what would have happened if the legislature had not provided for the discount. It is a matter of general knowledge that, before the enactment of the several recent statutes affecting the collection of taxes, tax foreclosures were exceedingly numerous throughout the state, and that, through

foreclosure, many pieces of real estate were passing into the ownership of the counties and were thus removed from the tax rolls, so to remain until resold by the several counties. That resales, generally, did not bring satisfactory financial returns, seems to be the common understanding; and that many resales were made for a mere nominal consideration, so as to get the property back on the tax rolls, is generally believed. Thus, without the present law, no doubt the delinquent taxes on many pieces of property would have been largely, if not wholly, lost; and in addition, every parcel of real estate which passed to a county on tax foreclosure would, for a time at least, be freed from assessment and taxation. Who, then, shall say that the taxpayer who paid in full has not been benefited by the enactment of the statute here questioned? In a realm of such unknown possibilities, we cannot say, as a matter of law, that special privileges or immunities have been granted by the act which we are discussing.

██ Notwithstanding what has just been said, it seems self-evident that the county or the county treasurer cannot raise the question which we are now discussing. In matters of taxation, every taxpayer has a right to appeal to the courts on questions of lack of uniformity, discrimination, and the like, in order to protect and enforce his own constitutional rights. We know of no statute making counties guardians of their taxpayers in this respect. Whether or not this statute discriminates between individual taxpayers, does not concern any county in the state. The statute acts uniformly upon each of the several counties of the state, it confers no special privilege nor immunity, and there is no lack of uniformity as to the counties.

Of all the authorities cited pro and con upon this

question, the only ones which seem to have any bearing are *State ex rel. Matteson v. Luecke*, 260 N. W. (Minn.) 206, and *State ex rel. Kain v. Fischl*, 94 Mont. 92, 20 P. (2d) 1057. Each of these cases was instituted by a taxpayer claiming that the statute discriminated against him, and each was waged against a county officer who was attempting to carry into effect the discriminating statute.

In the Minnesota case, there was involved chapter 414 of the Minnesota laws of 1933, which directed that, in certain instances, delinquent taxes for 1926 and prior years might be satisfied by the payment of three-fourths of the original tax; and that, in certain instances, taxes for the years 1929 and 1930 might be satisfied by the payment of four-fifths of the original tax. The terms and provisions of the Minnesota statute, as disclosed by the opinion of the court, seem to be far more lacking in uniformity than is our own. In holding that this statute violated the uniformity provisions of the Minnesota constitution, the Minnesota court strongly condemned what it deemed to be the probable effect of the statute, saying, among other things:

"It is clear to us that the statute being considered (and the similar provision of Laws 1931, c. 129, § 2) is violative of this provision of our Constitution. The classification of subjects here attempted is unreasonable and fanciful. Realty owners are divided into two classes; those who pay taxes promptly and those who do not. The latter pay a smaller amount than the former. No reasonable basis founded on essential differences of nature or circumstances suggests itself for this classification. . . . Yet, in determining the reasonableness of a classification, a legitimate object for the court's consideration is the practical effect the classification is bound to have on business and organized society generally. In this connection it readily can be seen that the statute here concerned

encourages and fosters tax delinquencies in the state. Taxpayers are prompted to allow taxes to become delinquent in order thereafter to be able to satisfy them in full by the payment of a fraction of the amount originally assessed. Such result is not desirable, and demonstrates the unreasonableness of the classification.''

If this were an action by or against a taxpayer who had paid his taxes in full, the Minnesota case would be a strong authority in his favor, and yet, even in such a case, some fallacies in the argument of the Minnesota court might be observed. Our act and the Minnesota act alike legislate with respect to a condition already fixed, and neither could be an invitation to any one to bring himself within the terms of the act. No taxpayer could, after the passage of the act, elect to do the thing which would bring him under the act, although it is possible that a settled policy of enacting such statutes might in the end build up the belief that the legislature would eventually come to the relief of all distressed taxpayers. Such a belief would, indeed, be unfortunate, and such a settled policy could not be less than disastrous.

The Montana case, which we have cited, is much less in point. It construes a constitutional provision very different from our own, and the facts are likewise dissimilar.

Since no taxpayer who has paid in full is a party to this action, we have no reason or excuse for now determining what the rights of such a taxpayer may be. We cite and discuss these authorities mainly for the purpose of showing that they are not applicable to the present question and, incidentally, as indicating how serious the question may be when properly presented.

■ The appellant next argues that the effect of the statute in question is to release or discharge taxes

levied for state purposes in contravention of Art. XI, § 9, of our constitution. That provision reads:

"No county, nor the inhabitants thereof, nor the property therein, shall be released or discharged from its or their proportionate share of taxes to be levied for state purposes, nor shall commutation for such taxes be authorized in any form whatever."

For many years, our statute law has provided for a three per cent rebate on real property taxes paid on or before March 15, next prior to the date of delinquency, and has specified that the amount of such rebates shall be charged to the county current expense fund. No one has questioned that law, probably because it expressly provides that the county shall bear the loss of the rebate. The 1935 act does not, in terms, provide that the five per cent rebate shall be borne by the counties, but it is not to be assumed that the legislature acted in defiance of the constitution. On the contrary, since there is nothing in the language of the statute, directly or by necessary implication, indicating a purpose to release or discharge any portion of the taxes levied for state purposes, it must be assumed that the legislature intended that the state taxes should not be affected by the act, and that the loss, if any, arising from the rebate should be borne by the counties.

That this was the legislative intent, becomes a certainty, when we consider that the act of 1935 fails to repeal Rem. Rev. Stat., § 11223 [P. C. § 6882-71], which, in effect, provides that state taxes, delinquent and unpaid for a period of seven years, shall be by the state auditor certified to the several county assessors, and that such delinquent state taxes shall then be added to the amount levied for the current year. A reading of § 11223 clearly discloses the legislative intent that no state tax shall ever be lost by reason of the nonpayment, in whole or in part, by

individual tax payers; and since that section still stands, it is quite evident that thereby the state is fully protected from loss to any of its funds by reason of anything contained in the act of 1935. Since it appears that none of the taxes levied for state purposes can be affected, Art. XI, § 9, of the constitution is not violated.

The appellants also rely upon Art. I, § 10, of the Federal constitution and Art. I, § 23, of the state constitution, forbidding the enactment of law impairing the obligations of contracts, and they argue that, since King county is indebted in the sum of upwards of fourteen million dollars on outstanding bonds and warrants, and since the outstanding delinquent taxes, even if paid in full, would not balance that indebtedness, therefore, by reason of this rebate, its ability to pay its creditors is impaired and the constitution is thereby violated.

No creditor of King county is a party here. It would seem that what has been said in discussing the first point raised is equally applicable here; namely, it is not established that King county's ability to meet its obligations is in any degree lessened by this act, and even if that were the fact, those only who would suffer loss thereby can raise the question.

The state is sovereign in matters of taxation. The counties are creatures of the state and may enjoy and exercise only such rights, powers and privileges as the state accords to them. *Tacoma v. State Tax Commission,* 177 Wash. 604, 33 P. (2d) 899.

It is also asserted that the act in question offends against the uniformity provision of the fourteenth amendment to our constitution. What has been said is applicable here and need not be repeated. If there be any lack of uniformity, only the taxpayer who suffers thereby may raise the question. *Darnell*

*v. Indiana,* 226 U. S. 390, 30 S. Ct. 120; *New York ex rel. Hatch v. Reardon,* 204 U. S. 152, 27 S. Ct. 188, and *State ex rel. Dillon v. Braxton County Court,* 60 W. Va. 339, 55 S. E. 382.

In neither *Morf v. Johnston,* 173 Wash. 215, 22 P. (2d) 663, nor *Western Finance Corporation v. Thurston County,* 173 Wash. 455, 23 P. (2d) 576, were these constitutional questions presented or considered, and neither case is at all helpful here.

In view of the long followed, and until now unquestioned, practice in this state of permitting reasonable discounts for an apparently helpful purpose, and especially in view of the time limitations written into the act of 1935, we feel that there is no injustice in applying the somewhat technical rule which forbids the county and its treasurer from raising these constitutional questions.

The judgment is affirmed.

MILLARD, C. J., HOLCOMB, BEALS, and GERAGHTY, JJ., concur.

STEINERT, J. (dissenting)—I read in the prevailing opinion an earnest, sincere, and even commendable, desire to uphold a legislative act, chapter 166, Laws of 1935, p. 553, Rem. 1935 Sup., § 11273-1B [P. C. § 6882-138½a] *et seq.,* which has for its purpose, not only the alleviation of those who may lose their property because of their inability to pay the delinquent taxes thereon, but also the creation of a stimulus to such persons to procure and pay the funds necessary for the support of state, county and municipal government. I recognize also the possible effect that a contrary decision may have upon titles to certain properties upon which taxes have been paid in reliance upon the validity of this statute and likewise of its predecessor, chapter 51, Laws of 1933, Ex. Ses., p.

125, Rem. 1934 Sup., § 11273-1 [P. C. § 6882-138r] *et seq.*

Nevertheless, the question of the unconstitutionality of the act of 1935 having now been squarely raised, I am constrained to meet that question and determine it according to the obligatory command of the constitution, rather than by the results that may flow from its enforcement. Even if there were a choice in such matters, I think it is far safer and better, in the long run, to obey the mandate of the constitution, even though it may entail some immediate hardship, than to suspend its force for the time being and thereby weaken its whole effect, simply for the purpose of obviating a presently difficult situation. The constitution does not permit of detours, and I do not believe that they should be encouraged. The constitution may be changed by those who established it, but it cannot be denied by those who are enjoined to obey it.

The fourteenth amendment, which has its sustenance in Art. VII, §§ 1 to 4, inclusive, and which draws its full vigor from its recent passage by the people, provides:

"The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. All real estate shall constitute one class: . . ."

The fourteenth amendment is positive and absolute in its terms, inflexible in its command, and permissive of no exceptions. It conforms in phraseology to Art. I, § 29, of the constitution, which declares that "the provisions of this constitution are mandatory, unless

by express words they are declared to be otherwise.''
According to the amendment, the power of taxation
shall *never* be suspended, not *occasionally.* All taxes
shall be *uniform* upon the *same class of property,*
not variant according to conditions or circumstances
affecting certain properties within a given class. The
word ''property,'' as used in connection with the
provision of uniformity within the same class, means
*everything,* whether tangible or intangible, capable of
ownership, not *something* within the designated class.
*All* real estate, not a *part* of it, shall constitute one
class.

In my opinion, there could be no more restrictive
embargo laid upon the legislature than is contained
in this language. The fourteenth amendment con-
tains no hint an invitation or permission to the
legislative body to seek escape from its imperative
utterance. It tells those who exercise the power of
taxation just how that power shall be exercised. The
method is prescribed and the effect is ordained. Di-
gression is not contemplated or countenanced.

But what has the legislature done in this instance?
It has surrendered, in part, and for the benefit of
some, the result already accomplished by the exer-
cise of its power of taxation. It has attempted to
bestow charity where it has no power to bestow. It
has assumed to effect a composition where it cannot
compound. It has presumed to prescribe a supposed
beneficent remedy when it has no discretion in the
matter. It has simply done what it has no power or
right to do.

The legislature could not provide that there should
be a different levy upon properties within the same
class or that the taxes should be variable as to prop-
erties within such class. What the legislature cannot
do in the first instance, it cannot do subsequently by

circumvention, no matter how beneficent its purpose may be. The power of the legislature in matters of taxation is not absolute or supreme, but is subject to two limitations, viz: (1) the provisions of the Federal and state constitutions, and (2) the inherent limitations upon that power. First and foremost of the limitations prescribed by the constitutions of practically all the states is the provision of uniformity, expressed in one form or another. Unless the legislature proceeds within that limitation, it cannot proceed at all.

In my opinion, it is no answer to say, as the prevailing opinion says, that the county may not raise the question of the unconstitutionality of the act. The county is vitally interested in its taxes. Without them, it cannot function. Whatever interferes with its right to collect its taxes, interferes with its very means of existence. More than that, the county treasurer is charged with the amount of taxes levied and extended upon the tax rolls. Rem. 1935 Sup., § 11243 [P. C. § 6882-82]. The treasurer is made the sole collector of *all* delinquent taxes and all other taxes due and collectible. Rem. 1935 Sup., § 11245 [P. C. § 6882-84]. The power and *duty* to levy on property and collect *any* tax due and unpaid are made to continue in, and devolve upon, the county treasurer. Rem. Rev. Stat., § 11257 [P. C. § 6882-96].

It appears to be conceded in the majority opinion that a taxpayer may maintain an action of this kind because he is vitally interested. But the interest of the county is, with respect to its taxes, not less than that of the individual taxpayer, but greater. Its interest is exactly in proportion to the sum total of the taxes to be paid by all its property owners. What they gain by an unlawful deduction, the county loses. If there is anyone legally interested and qualified to

raise the question here involved, the county, in my opinion, assuredly is.

I therefore dissent.

MITCHELL, J., concurs with STEINERT, J.

BLAKE, J. (dissenting)—I dissent. I think the act is unconstitutional in so far as it permits remission of five per cent of the *tax levied*. To that extent, it makes for inequality of taxation among owners of real estate.

MAIN, J., concurs with BLAKE, J.