[No. 35990. *En Banc.* March 22, 1962.]

BENNETT-IRELAND, INC., *Plaintiff*, v. AMERICAN ALUMINUM PRODUCTS CO., INC., *Respondent*, KING COUNTY *et al., Appellants.**

* Reported in 369 P. (2d) 957.

*Charles O. Carroll, James J. Caplinger* and *William L. Paul, Jr.,* for appellant King County.

*Charles P. Moriarty* and *James F. McAteer (Louis F. Oberdorfer, Lee A. Jackson, A. F. Prescott,* and *George F. Lynch,* of counsel), for appellant United States of America.

*The Attorney General* and *James A. Furber, Assistant,* for respondent.

DONWORTH, J.—This is a receivership proceeding in which we are called upon to review the relative priorities of certain claims as fixed by the trial court.

The case originated in an action instituted by a material-man in which it sought judgment against American Aluminum Products Co., Inc., for materials sold and delivered, and asked for the appointment of a receiver to liquidate the corporation's assets for the benefit of its creditors. The corporation admitted it was insolvent, and on February 17, 1960, the appointment of a receiver was ordered. Prior to that time, the Washington State Tax Commission, pursuant to certain judgments, had levied on and taken possession of all stocks, fixtures, and equipment belonging to

the insolvent corporation; and had posted a notice of tax sale of this property. On February 24, 1960, the day that the receiver was appointed, the Tax Commission relinquished possession of the property in consideration of a stipulation by all the parties that its rights would be preserved in the receivership. Various claimants, including the United States, the State of Washington, King County, Washington, and wage claimants filed claims.

The property was sold after the various claimants had stipulated that the property could be sold free and clear of all liens, encumbrances, and claims. There was no waiver of rights by any party since, under the stipulation, any rights which each party had in the property were to attach to the proceeds of the sale, and the validity and priority of the various claims were to be determined at a later hearing held for such purpose.

The receiver filed a final report on January 16, 1961, and a hearing thereon was had in the Superior Court for King County on February 3, 1961. On that date, orders were entered approving the report and allowing claims. The court directed that the claims were to be paid in the following order from the $5,578.31 remaining after payment of expenses of administration:

1. Tax Commission of the State of Washington...$1,309.48
2. Wage claims ................................ 2,781.02
3. United States of America.................... 3,421.96
4. King County, Washington....................   826.37
5. Rent  ....................................   600.00
6. Prior (nonlien) tax claims
    a. City of Seattle............................    29.54
    b. State Dept. of Labor & Industries..........   317.44
    c. State Employment Security Dept............   497.87
7. Unsecured general creditors

After the denial of motions for rehearing and reconsideration, the United States and King County appealed.[1]

---

[1]The brief of the state says: ". . . the State of Washington appealed on behalf of the Department of Labor & Industries and Employment Security Department solely to protect their rights in the

The first appellant we shall deal with is the United States, which merely seeks a reversal as to the finding that the wage claimants take priority over the claims of the United States.[2]

■ The trial court applied the priorities of the Federal Bankruptcy Act, as provided by RCW 23.01.610, in giving the wage claimants priority over the tax claim of the United States. This was error. The relative priority of a federal claim is subject to governing federal law, which is supreme over state law. *In re Shoptaw's Estate*, 54 Wn. (2d) 602, 343 P. (2d) 740 (1959). 31 U.S.C. § 191 (U. S. Rev. Stat. § 3466) provides that "Whenever any person indebted to the United States is insolvent . . . the debts due to the United States shall be first satisfied; . . . ." This statute is applicable in any nonbankruptcy proceeding, such as the present case. In such proceedings, claims of the United States have uniformly been afforded priority over wage claims. See, *e.g., United States v. Emory*, 314 U. S. 423, 86 L. Ed. 315, 62 S. Ct. 317. See, generally, 63 Yale L. J. 905 (1954). The debts due to the United States are to be satisfied before any of the wage claims are paid.

We now turn our consideration to the second appellant, King County. The county has advanced four arguments in its effort to raise its priority from the rank assigned it by the trial court. If none of the four arguments is successful, King County will receive nothing.

event that RCW 23.01.610 is declared unconstitutional." The state's cross-appeal is expressly contingent, and since the contingency does not arise in this case, we shall treat the state simply as a respondent.

[2]A footnote in its brief explains the position of the United States: "While the United States does not challenge the priority accorded to the State of Washington Tax Commission, which, prior to the receivership had distrained and actually taken possession of property belonging to the taxpayer to satisfy taxes with respect to which it had obtained judgments, such failure is not to be deemed a concession that it has priority. Under the Government's contention that the state statute is inapplicable, the wage claimants must yield to the United States; if that contention is sustained by this Court, the claims of both the United States and the State Tax Commission will be satisfied from available funds, and there will be no necessity to resolve the priority between the two."

King County first contends that RCW 23.01.610 is unconstitutional. Based on that contention, the county advances several arguments which, if accepted, would result in reversal or modification of the holding of the trial court.

■ In considering an attack on the constitutionality of a statute, this court first considers whether the attacking party has standing to make the contention. See *State v. Bell, ante* p. 338, 368 P. (2d) 177 (1962).

■ We have consistently held that a county's financial interest affords it no right to challenge the constitutionality of a statute. *Kitsap Cy. v. Bremerton,* 46 Wn. (2d) 362, 281 P. (2d) 841 (1955); *State ex rel. Evans v. Brotherhood of Friends,* 41 Wn. (2d) 133, 247 P. (2d) 787 (1952); *King Cy. v. Port of Seattle,* 37 Wn. (2d) 338, 223 P. (2d) 834 (1950); *Vance Lbr. Co. v. King Cy.,* 184 Wash. 402, 51 P. (2d) 623 (1935). Since King County has no standing to challenge the constitutionality of RCW 23.01.610, we cannot consider the question, and we must give the statute its intended effect.

RCW 23.01.610, which is part of the uniform business corporation act, provides that:

"In a proceeding for dissolution subject to the supervision of the court, all questions in respect to proof, allowance, payment and priority of claims shall be governed by the same rules as are applicable in bankruptcy proceedings under the national bankruptcy act as in force at the time of the dissolution proceedings."

Reference will be made directly to the Federal Bankruptcy Act in discussing King County's remaining contentions.

■ The second contention made by the county is that it has a prior lien, which is specific and perfected. However, the lien of the county is a statutory floating tax lien on the personal property owned by the insolvent corporation for taxes payable in 1960 and 1961. The county never actually took possession of the property. Section 67.c(1) of the Bankruptcy Act (11 U.S.C. § 107) provides that such valid statutory liens on personal property, *if unaccompanied by possession,* shall be postponed in payment until after the payment of debts within the first two priorities in

§ 64.a.[3] Section 64.a (11 U.S.C. § 104) assigns priorities to debts whose security, if any, is insufficient or unrecognized under the Bankruptcy Act. First priority: "(1) the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; . . ." Second, to be paid only after the first is paid in full: "(2) wages . . . not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, . . ." Section 67.c(1) postpones the county to a position after that of the wage claimants, because its non-possessory lien is payable *after* the wage claims, which have second priority, according to the statute.

The type of lien held by the county cannot defeat the priority of the United States, under 31 U.S.C. § 191, according to the authorities mentioned in the previous discussion of the claims of the United States. See, also, *United States v. City of New Britain,* 347 U. S. 81, 98 L. Ed. 520, 74 S. Ct. 367 (1954), wherein the supreme court pointed out that:

"When the debtor is insolvent, Congress has expressly given priority to the payment of indebtedness owing the United States, whether secured by liens or otherwise, by § 3466 of the Revised Statutes, 31 U.S.C. (1946 ed.) § 191. In that circumstance, where all the property of the debtor is involved, Congress has protected the federal revenues by imposing an absolute priority. . . ."

Since the lien of the State Tax Commission was perfected by actual possession, it clearly defeats the county's lien. In fact, the lien of the State Tax Commission is recognized by § 67 of the Bankruptcy Act, and is not postponed by § 67.c, which postpones King County's claim.

The county's relative priority is not improved by arguing that it has a valid lien, since the lien of the county cannot defeat the higher priorities of the claims ranked above it by the trial court.

■ King County contends, thirdly, that its claim is an

---

[3]Section 67.c(2) invalidates such liens completely, if there is not at least a *levy, sequestration,* or *distraint.* The lien of King County is probably valid under this test, but we are not called upon to decide that question in this case.

expense of administration. If § 64.a of the Bankruptcy Act includes such debts within the meaning of "actual and necessary costs and expenses of preserving the estate subsequent to filing the petition," then § 64.a provides for the payment of the taxes due to the county, *prior to* payment of wage claims. That is, the county would have priority over the wage claimants.

In its brief, King County quotes extensively from many cases which held that receivers who operate a business, rather than liquidate it, are obligated to pay taxes accruing during administration (*e.g. Swarts v. Hammer,* 194 U. S. 441, 48 L. Ed. 1060, 24 S. Ct. 695 (1904); and *Ingels v. Boteler,* 100 F. (2d) 915 (1938)). The county has not given this court the benefit of *any* argument as to why those cases apply to this case, or why such taxes should be classified as the kind of "expenses of administration" which are contemplated by § 64.a of the Bankruptcy Act.

Apparently, the contention is that whenever the receiver is required to pay taxes accruing during administration, such taxes are an "expense of administration" within the meaning of the statute. No language has been quoted to this court, from either state or federal cases, which so holds. Even if there had been such a holding, the receiver here simply liquidated the business rather than continuing to operate it under the supervision of the court. Furthermore, there has been no showing that the taxes (which King County is seeking to recover) actually accrued during the administration of the receivership. As an appellant, King County has not sustained the burden of persuading this court that its claim is entitled to priority as an "expense of administration."

■ The fourth and final contention of King County is that three of the claims which were afforded priority as wage claims were not entitled to preferential treatment. The total amount that the trial court ordered to be paid on the three contested claims is $1,534.56. Thus, $1,246.46 would remain to be paid to the other wage claimants, out of the fund of $846.87 remaining after payment of higher-priority

claims.[4] Therefore, it is apparent that even if the county were correct in its contention that these three wage claimants should have been treated as general creditors, the remaining wage claims would use up all of the remaining funds. Since a favorable disposition of this contention would avail King County nothing, the question is moot, and we cannot decide the issue.

As to the contentions of King County, the judgment of the trial court is affirmed.

Our disposition of these appeals is as follows:

1. The order of the trial court is reversed on the appeal of the United States and its claim is to be paid in full.

2. The order is affirmed as to the claim of the Tax Commission and its claim is to be paid in full.

3. The order is affirmed on the appeal of King County and its claim is subordinated to the wage claims.

4. As to the remainder of the original fund ($5,578.31) in the hands of the receiver (after the payment of the cost of administration), the cause is remanded for such further proceedings as the trial court deems necessary to determine the rights of the remaining claimants to monies then remaining in *custodia legis,* according to provisions of RCW 23.01.610, in a manner consistent with this opinion.

5. None of the parties to this appeal shall recover its costs in this court.

It is so ordered.

FINLEY, C. J., HILL, WEAVER, ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur.

---

July 6, 1962. Petition for rehearing denied.

---

[4]This sum was arrived at by subtracting the Tax Commission's claim of $1,309.48 and the United States' claim of $3,421.96 from the sum of $5,578.31 available for distribution after payment of the cost of administration.