No. 31,130.

The Prudential Investment Company, *Appellant*, v. The National Reserve Life Insurance Company, *Appellee*.

(21 P. 2d 373.)

Opinion filed May 6, 1933.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Margaret McGurnaghan* and *Ralph M. Hope,* all of Topeka, for the appellant.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover on an indorsement on municipal bonds. Judgment was for defendant. Plaintiff appeals.

The bonds were deposited by defendant with the insurance commissioner. At the time they were deposited the following statement was put upon them:

"This bond is our property. National Reserve Life Ins. Co.—Geo. Godfrey Moore, Pres. or Vice Pres., and is not transferable without our indorsement below, executed by the president or vice president and secretary or treasurer."

The words "Geo. Godfrey Moore" were written with a pen. The rest was printed.

When the bonds were withdrawn from deposit and sold the following was written beneath the words already described:

"Geo. Godfrey Moore, President.
"I. G. Hayter, Treasurer-Secretary."

In the course of trade the bonds reached the hands of plaintiff. The city of Frontenac made default in payment and this action followed.

Aside from the question of the custom of insurance companies in putting a statement of this kind on bonds that are deposited with the state, which question is not of interest to us here, there was no dispute as to the facts.

The theory upon which plaintiff seeks to recover is that the bonds are negotiable instruments and the writing of the names last described in this opinion constituted an indorsement of the instruments just as in the case with a promissory note and made defendant liable as an indorser.

Defendant contends that the entire statement was put on the bonds under the terms of R. S. 52-1801 and that the words which plaintiff seeks to construe as an indorsement really only served to restore the quality of negotiability to the bonds and did not operate as an indorsement.

R. S. 52-1801 is as follows:

"The owner or holder of any corporate or municipal bond or obligation (except such as are designated to circulate as money, payable to bearer), heretofore or hereafter issued in and payable in this state, but not registered in pursuance of any state law, may make such bond or obligation, or the interest coupon accompanying the same, nonnegotiable, by subscribing his name to a

statement indorsed thereon, that such bond, obligation or coupon is his property; and thereon the principal sum therein mentioned is payable only to such owner or holder, or his legal representatives or assigns, unless such bond, obligation or coupon be transferred by indorsement in blank, or payable to bearer, or to order, with the addition of the assignor's place of residence."

The plaintiff points out R. S. 52-604, which is as follows:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

It then argues that when the signature of appellant was placed on the bonds in question it was bound as an indorser because it did not clearly indicate by appropriate words its intention to be bound in some other capacity.

The signature, by which it is sought to charge defendant as an indorser, must be considered along with the statement on the bonds to which it was attached. When plaintiff bought the bonds bearing the so-called indorsement it took them charged with notice of the statement. When this statement is examined, it is manifest it was put there for one purpose and one purpose only and that was to make the bonds nonnegotiable instruments so that they could only be transferred by having the signature affixed.

An examination of R. S. 52-1801 makes it plain that this was the purpose of putting the statement on the bonds in the first place. The statute provides that the owner of municipal bonds might make them nonnegotiable by doing the very thing that was done to these bonds. No argument is made and also no reason appears why the statute is invalid. Hence, we conclude that the statement appearing on the bonds did make them nonnegotiable.

Since this is the case, what was the effect of attaching the signature of defendant to the bonds when they were later sold? Having once put the statement on the bonds defendant could only sell them by attaching the signature, as provided in the statute. Manifestly no one would buy them without the signature. This signature was not intended to bind the defendant in any way. It was only affixed for the purpose of making the bonds payable to others than defendant or its legal representatives. This was simply completing the statement that had been placed on the bonds in the first place. The bonds were not negotiable instruments when the signature was affixed. They had been made nonnegotiable by putting the state-

ment described on them. Some act was needed to take away the effect of this statement. This act was the signature described. It cannot be said that the same signature could operate to restore negotiability to the bonds and also be an indorsement.

This was the conclusion reached by the trial court and we see no reason for disturbing it.

The judgment of the district court is affirmed.

HARVEY, J. (concurring specially): My interpretation of the statute (R. S. 52-1801), as it pertains to this case, is that two things may be accomplished under it: First, the owner, by placing a specific notation on the bond, may mark it, in a sense brand it, as his property. The purpose of this is to prevent its loss through inadvertence or theft. (See Paton's Digest, §§ 2542, 2542a.) This is a desirable thing to accomplish, since it is a municipal bond, payable to bearer, and the statute which authorized its issue made no provision for registering it as to ownership. Second, the owner, having once marked the bond as his own, may remove that mark, but if he does so he must do it in a specific way so there may be no question as to who did it.

When the owner marked the bond as his own, it became "nonnegotiable," and remained so "unless" and until he made the additional entry thereon which removed his mark of ownership. When that was done it again became a bearer bond, negotiable on delivery.

The section of our statute (R. S. 52-1801) is not a part of the negotiable instruments law as compiled and recommended by the commission on uniform laws, and it is not mentioned or treated in Uniform Laws, Annotated, Vol. V, Negotiable Instruments Act, or in Brannan's Negotiable Instruments Law. It was taken from New York, where it was enacted as a separate statute at an early day (see Laws 1870, ch. 438; Laws 1871, ch. 84; Laws 1873, ch. 595), and later made a part of the negotiable instruments law (Laws 1897, ch. 612, § 332; Laws 1909, ch. 43, § 332. See McKinney's Laws of New York, § 332). As an independent statute I find no difficulty in interpreting it as above, although language less cumbersome might have been used. When considered as a part of the negotiable instruments law, and when we attempt to give some of the words used in the section the meaning or force they have in

other sections of that law, much confusion and uncertainty result. I prefer to consider it as applying to circumstances mentioned in the section and the purposes designed to be accomplished by its provisions—matters not treated elsewhere. By doing so we can give it a meaning, obviously intended, reasonably clear, and one in accord with which business can be transacted more safely.