No. 32,636

W. W. PATTERSON, as Guardian of JANE KURTZ and HELEN KURTZ, Minor Heirs at Law of Harvey Kurtz, Deceased, *Appellee,* v. THE CITIZENS NATIONAL BANK, *Appellant.*

(55 P. 2d 352)

filed March 7, 1936.

*Douglas Hudson,* of Fort Scott, for the appellant.
*Walter B. Patterson,* of Fort Scott, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action for the conversion of four bonds of the state of Kansas of the face value of $1,000 each. The trial court made findings of fact and rendered judgment for plaintiff. The defendant has appealed.

The pertinent facts may be stated as follows: Jane Kurtz and Helen Kurtz are minors. On February 1, 1927, Charles W. Bruce was duly appointed and qualified as the guardian of their estate by the probate court of Bourbon county. Thereafter, with the approval of the probate court, he purchased for the estate of such minors, and with their funds, six State of Kansas Soldiers' Compensation bonds of the face value of $1,000 each, bearing 4½ percent interest and due July 1, 1937. This action, as it reaches this court, involves four of those bonds. Thereafter and about January 26, 1929, Bruce resigned as guardian of the estate of such minors, and James G. Sheppard, of Fort Scott, was duly appointed and qualified as such guardian. Bruce delivered the six bonds to Sheppard and took his receipt therefor. On February 8, 1929, Sheppard caused the bonds to be registered in the office of the state treasurer, as authorized by R. S. 10-601, as the property of "Helen and Jane Kurtz's Estate, James Sheppard, Guardian." At that time the bonds were presented to the state treasurer and he perforated each of them, "Registered—Kansas Treasurer," and stamped on the back of each bond, "This bond is registered on line No. [5257], Book 2." The stamp on each bond, of course, showed its individual line number. On June 2, 1931, Sheppard made a report to the probate court in which he claimed credit for $6.90 under the notation, "Kansas State Treasurer, for registration of bonds." At the time he made this report Sheppard had the six bonds with him and exhibited them to the court.

On June 16, 1932, Sheppard borrowed $750 of the defendant bank and executed a collateral note for the amount due in thirty days. The note is a lengthy instrument and among other things recites that the maker pledged to the bank as collateral security for the payment of the note a "State of Kansas Soldiers' Compensation bond

No. 13,255," which Sheppard, by the instrument signed, represented to own. The bond described is one of those belonging to the estate of the minors above mentioned. The bond was handed to the bank with the collateral note. It showed the perforation made therein and the endorsement stamped thereon by the state treasurer when it was registered. The bank made no inquiry of the state treasurer as to who was the owner of the bond as shown by his record of its registration. The evidence discloses this loan was made and Sheppard received credit for its proceeds on June 16, 1932, but for some reason the note was dated and the loan entered on the bank's records June 18, 1932. In the meantime and on the date of June 17, 1932, an entry was made on the proper lines of book 2 of the state treasurer's record showing an assignment of these six bonds from the estate of Helen Kurtz and Jane Kurtz, James Sheppard, guardian, to James G. Sheppard, 824 Crawford street, Fort Scott, Kan., personally. On that date the treasurer wrote Sheppard at his Fort Scott address as follows:

"In accordance with our conversation, I am herewith enclosing the six assignments for line No. 5257, 5258, 5259, 5260, 5261 and 5262 which have been assigned to 'James G. Sheppard, 824 Crawford street, Fort Scott, Kansas.' "

In the ordinary course of the mail this letter would have reached Fort Scott June 18, 1932. This letter and such other evidence as there is bearing on the point tends to show that Sheppard appeared personally at the state treasurer's office and caused the entry to be made in the treasurer's books showing the transfer of the bonds to him personally. Whether he had the bonds with him is not disclosed by the evidence. The method of handling such assignments at that time in the state treasurer's office it seems did not require the bonds to be presented at the time the assignment was entered in the treasurer's records, although sometimes they were presented with the assignment. The state treasurer, as authorized by statute, had prepared a form for the assignment of registered bonds. That blank form is as follows:

"ASSIGNMENT OF REGISTERED BONDS

"———— Date ——— 19——

"For value received ——— hereby assign to ——— bond No. —— of ——— in county, state of Kansas, issued ———, due ——— for $———, registered in the state treasurer's office on the —— day of ———, 19——, on line No. —— of said records in the state treasurer's office, and I hereby authorize the transfer thereof on the state treasurer's records.

Signature."

This is followed by a form of acknowledgment. The evidence shows that the method used for the assignment of registered bonds was for the owner, as shown by the registration books of the state treasurer, to fill out this blank by dating it, putting in the name and address of the assignee, the number of the bond, the issuing body, the date it was issued, the date due, the amount of the bond, and the date and line on which it was registered, and to sign and acknowledge the signature before some officer authorized to take acknowledgments of written instruments. When this assignment is properly filled out and presented to the state treasurer it is the practice for him to make on his records the appropriate entry showing the date and to whom the bond was assigned. It seems the treasurer did not keep these assignments, and perhaps usually, as in this case, returned them to the person to whom the bonds had been assigned. Presumably in this instance an assignment for each of the bonds had been made out by Sheppard and presented to the state treasurer. The assignments, however, were not attached to the bonds, as is sometimes the practice, and what became of them after they were sent by the state treasurer to Sheppard at Fort Scott is not disclosed by the evidence.

The evidence discloses that the probate court never at any time, by an order made, or in any other manner, authorized James G. Sheppard, as guardian, to have these bonds assigned to himself personally, or to the defendant bank, or to anyone else. It was clearly shown that his act in causing them to be assigned to himself personally, and his act in putting them up with the bank as collateral security for his personal debt and representing to the bank that he owned them, were entirely unauthorized. There is no contention to the contrary. Parenthetically, it may be added, the evidence discloses that Sheppard was later charged with the embezzlement of these bonds, entered a plea of guilty to the charge, and was sentenced to the penitentiary. We may also say that his trustee was a party defendant to this action, and plaintiff recovered judgment against the trustee for the conversion of the six bonds; but since there is no appeal from that branch of the case it need not be further noted. This appeal involves the liability of the bank on its alleged participation in the conversion of four of the bonds.

Getting back to the evidence, insofar as it involved the bank, we have stated the evidence respecting the loan made to Sheppard June 16, 1932. On July 16 the bank made Sheppard an additional

loan of $700, taking another one of the bonds in question as collateral security. On September 12, 1932, these two loans were merged into a loan of $3,000, the additional amount being paid to Sheppard, and the two bonds previously pledged to the bank on the earlier loans and two additional bonds were pledged as security for the $3,000 loan. On December 12, 1932, the loan was increased to $3,600, secured by the same four bonds as collateral. Later the bank loaned Sheppard $400 on his straight note. This indebtedness of $4,000 continued until January 13, 1934, at which time the bank sold the four bonds which had been pledged as collateral, and from the proceeds paid the notes it held and placed the balance of $5 to the credit of Sheppard.

On August 24, 1932, the bank wrote the state treasurer advising him that a depositor presented two registered bonds, describing the two bonds then pledged with it, and asked to be advised in whose name the bonds now stand, and that it be sent appropriate forms for having the bonds assigned. The treasurer replied: "Our records show these bonds registered in the name of James G. Sheppard, 824 Crawford street, Fort Scott, Kan.," and enclosed blank forms for assignment. On September 13, 1932, the bank sent to the state treasurer assignments for these bonds executed by James G. Sheppard. There was a little delay in making the entry because of a defect in the assignment, but on September 17 the entry was made in the office of the state treasurer showing an assignment of each of the four bonds in question from James G. Sheppard to the defendant bank.

In July, 1933, the probate court received notice that the bonding company which was surety on Sheppard's bond had become insolvent. The court asked him to give a new bond, which he did not do. The court then asked him to file a report, which he did December 19, 1933. This showed a sum due the estate which obviously included the amount of these bonds. In his report Sheppard requested that he be relieved as guardian. His resignation was accepted and W. W. Patterson was appointed and qualified as guardian in his place. The court made an order that Sheppard turn over to the new guardian the property and money of the estate as shown by his report. This he did not do. The court then made an order for W. W. Patterson as guardian to bring this action.

Turning now to the legal questions argued. Appellant contends that the bonds were negotiable instruments in a commercial sense;

that the negotiable character of the bonds was not destroyed by their registration with the state treasurer, and that it is a holder of the bonds in due course. Appellee contends that the registration of the bonds with the state treasurer destroyed their negotiability in the commercial sense; that thereafter they were payable only to the rightful owner, as shown by the registration, and that in any event appellant is not a holder in due course, for the court eventually found that it took the bonds under circumstances amounting to bad faith. We do not find it necessary to recite in detail all the evidence which appellee contends supports the finding made by the trial court with respect to the good faith of appellant. The trial court found in effect that the registration of the bonds with the state treasurer destroyed their characteristic of negotiability in the commercial sense. Appellant contends this is an incorrect view of the law. We therefore go directly to that question. The statute providing for the registration of bonds, as enacted in 1923 (Laws 1923, ch. 225), contained five sections, which later became R. S. 10-601 to 10-605. The second section of the act was amended by chapter 93 of the Laws of 1927. The first section of the act (R. S. 10-601) and the second section, as amended in 1927 (R. S. 1933 Supp. 10-602), read as follows:

"That the state treasurer shall register any state, county, city, township, or school district, or drainage district bonds which the holder thereof may present to him, making a record thereof in a book kept for that purpose, showing the municipality issuing the same, the series of the bonds, the date, amount, number, maturity, and purpose for which such bond was issued, together with the name and post-office address of the holder thereof. That on registering any bond the state treasurer shall notify the municipality issuing the same of its registration and the same shall be payable on its maturity by the municipality to the state treasurer. When the state treasurer shall so register any bond, he shall stamp through said bond with a perforating stamp the words 'Registered, Kansas treasurer.'

"That after the registration of any bond it shall be negotiable only by formal assignment before a notary public, identifying the bond assigned by the name of the municipality issuing the same, the number, date, amount, and said assignment shall be acknowledged the same as conveyances of real property. All assignments of bonds shall be forwarded to the state treasurer for endorsement on his records, which record shall set forth the name and address of the assignee, except when it is the desire of the registered owner to release the bond from registration and further assignment, in which case the bond shall be assigned to 'bearer,' and by the state treasurer so endorsed upon his records. The state treasurer shall have printed such forms as may be necessary for use in making such assignments which shall be delivered to persons desiring the same on request."

Appellant points to the word "negotiable," used in the statute, and contends that by the use of this word the legislature intended that notwithstanding the registration of the bonds they should continue to be negotiable in the commercial sense. We cannot agree with that view. The context indicates that the word is used in the sense of transferable, which would make the statute read that after registration the bonds are transferable by assignment. Other language in the statute is in harmony with this view.

More than that, the wording of the bonds indicates clearly that the bonds are to be no longer negotiable in the commercial sense after registration, unless, of course, they are again assigned to bearer. The wording of the bond is that the state "promises to pay the bearer, or if registered, to the registered holder thereof, the sum of . . ." This language, with the use of the disjunctive "or," makes it clear that the bonds are payable only to the registered holder, if they have been registered.

On this point we agree with the trial court that the registration of the bonds with the state treasurer destroyed their negotiability in a commercial sense. They were thereafter transferable by assignment by the owner. The statute provides a way, by an assignment to bearer, by which the negotiability of the bonds in a commercial sense could be restored, but neither Sheppard nor the bank made any attempt to act under that provision of the statute. In reaching this conclusion we need to go no further for authorities than the statute and the wording of the bonds. These seem to require this result. The statute heretofore has not been passed on by this court, and but few decisions from other jurisdictions bearing on the question are cited. *Benwell v. Newark*, 55 N. J. Eq. 260, 36 Atl. 668, dealing with a registered city bond, and *Grosfield v. First Nat. Bank*, 73 Mont. 219, 236 Pac. 250, dealing with a U. S. registered bond of the Third Liberty Loan, and authorities cited in those cases, are in accord with this view.

Appellant cites *Graham v. White-Phillips Co.*, 296 U. S. 27, 80 L. Ed. 62, dealing with the liability of a purchaser of stolen bonds. The bonds in that case had not lost their characteristic of negotiability in the commercial sense, hence the case is not in point. Some other cases cited are not in point for the same reason. *Railroad Co. v. Nation*, 82 Kan. 345, 108 Pac. 102, cited by appellant, had to do with the registration of bonds by the state auditor with respect to the regularity of their issue. It had nothing to do with

registration as to ownership with the state treasurer under R. S. 10-601. *Prudential Inv. Co. v. National Reserve Life Ins. Co.,* 137 Kan. 659, 21 P. 2d 373, is cited. That decision construed R. S. 52-1801 and had to do with the liability of one who endorsed bonds in harmony with that statute. Nothing said in that opinion is out of accord with our conclusion here.

Appellant next contends that in any event it is entitled to hold the coupons. This contention is based on R. S. 10-605, which reads:

"That this act shall not affect the negotiability of the coupons attached to any registered bond, said coupons to be negotiable without assignment or formal transfer."

This is one of the sections of the original statute (Laws 1923, ch. 225) for the registration of bonds with the state treasurer as to ownership. It is argued the registration of the bonds did not destroy the negotiability of the coupons, hence that appellant became the owner of all the coupons on the bonds. With this contention we cannot agree. Coupons are placed on bonds to facilitate interest payments and receipts therefor. They do not have an independent standing until their maturity, and the coupons were not listed in the collateral notes signed as having been pledged. The statute cited is designed to prevent the registration of the bonds from interfering with the normal method of collecting coupons. That method is to detach the coupons from the bonds when they are due, or shortly before, and to present them, usually through banking channels, for payment when they are due. It is in evidence in this case that the marketing or handling of bonds due some years in the future, with all coupons detached, is a thing unknown in commercial circles. We decline to give the statute the construction contended for by appellant.

We find no material error in the record. The judgment of the trial court is affirmed.