No. 32,785

W. W. PATTERSON, Guardian of Jane Kurtz and Helen Kurtz, Minors, *Appellant*, v. THOMAS B. BOYD and NATIONAL UNION INDEMNITY COMPANY, *Appellees*.

(38 P. 2d 1069)

Opinion filed July 3, 1936.

*Walter B. Patterson* and *Douglas Hudson,* both of Fort Scott, for the appellant.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson, Ralph W. Oman,* all of Topeka, *John Thomas Harding, David Andrew Murphy* and *R. Carter Tucker,* all of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action on the statutory bond of Thomas B. Boyd, former state treasurer. Judgment was for the defendants sustaining demurrers to the petition of plaintiff. Plaintiff appeals.

The petition alleged that plaintiff was the guardian of Jane Kurtz and Helen Kurtz, minors; that James G. Sheppard was appointed guardian for Jane Kurtz and Helen Kurtz; that at the time Sheppard was appointed guardian he received and took into his possession six bonds of the state of Kansas of $1,000 each, known as Kansas soldiers' compensation bonds; that about December 19, 1933, Sheppard resigned as guardian for the minors and was ordered to deliver to the plaintiff, W. W. Patterson, his successor as guardian, the sum of $6,612.59, shown by the final report of James Sheppard to be in his hands as guardian, in which was included the six Kansas soldiers' compensation bonds, and that Sheppard had failed to comply with that order.

The petition further alleged that Thomas B. Boyd was elected state treasurer and that he, together with the National Union Indemnity Company and the National Surety Company of New York, executed a bond as required by law in the principal sum of $500,000 conditioned that the said Thomas B. Boyd "shall safely keep all moneys which may be collected or received by him, or which may otherwise come into his hands by virtue of his office, and pay the same over to the proper person or authority, and shall honestly and faithfully discharge and perform, all and singular, his duties as state treasurer of the state of Kansas according to law, during his continuance in office."

The petition further alleged the approval of the bond and that the companies received a premium as consideration for the execution of it.

The petition further alleged that Sheppard, after his appointment as guardian, caused the six bonds to be registered in the office of

Boyd in the name of "Helen & Jane Kurtz Est., James Sheppard Guardian," and that the bonds continued as so registered in the office of Boyd until on or about June 17, 1932, when on that date Sheppard, as guardian of the minors and for the purpose of embezzling the bonds, induced Boyd and those acting for him to change the registration of the bonds from the estate of the minors to Sheppard personally, and that as part of this unlawful transaction Sheppard executed an assignment pretending to transfer the bonds from the estate of the minors to himself personally, and that those who acted for Boyd upon such assignment and without any exhibit of any order or authority from the probate court transferred the records of the bonds upon the books of the treasurer from the estate of the minors to Sheppard personally.

The petition further alleged that the assignment was made without any order of the probate court and bore evidence upon its face in the pretended transfer from a fiduciary to himself personally of the unlawful nature of the transaction, and that this was ignored by Boyd; that through the means described Sheppard embezzled the bonds; that after the transfer of the bonds Sheppard collected and kept the interest on them and that plaintiff is entitled to recover from defendants in the sum of $6,000 with interest at the contract rate of 4½ percent from January 1, 1932; and that Boyd forfeited the condition of his official bond by failing to discharge the duties of his office according to law.

Judgment was prayed against both defendants in the amount of $6,000 with interest. To this petition Boyd and the Indemnity Company demurred, on the ground that it did not state facts sufficient to constitute a cause of action. Both demurrers were sustained. Plaintiff appeals.

The position of defendant Indemnity Company is that as surety on the official bond of the state treasurer it can only be held liable for breach of official duty by the state treasurer; that is to say, by virtue of duty properly imposed by law. We are all agreed on that proposition.

The next step in defendant's position is that no duty was imposed by law upon the state treasurer to investigate the authority of Sheppard to make the assignment. When he received an assignment in statutory form, acknowledged as conveyances of real property must be acknowledged, his only duty was to record the name and address of the assignee. Upon this point depends the decision in this case.

The first statute we will notice is R. S. 10-601. That statute is as follows:

"That the state treasurer shall register any state, county, city, township, or school district, or drainage district bonds which the holder thereof may present to him, making a record thereof in a book kept for that purpose, showing the municipality issuing the same, the series of the bond, the date, amount, number, maturity, and purpose for which such bond was issued, together with the name and post-office address of the holder thereof. That on registering any bond the state treasurer shall notify the municipality issuing the same of its registration and the same shall be payable on its maturity by the municipality to the state treasurer. When the state treasurer shall so register any bond, he shall stamp through said bond with a perforating stamp the words 'Registered, Kansas treasurer.'"

· The next statute we will notice is R. S. 1933 Supp. 10-602, which is as follows:

"That after the registration of any bond it shall be negotiable only by formal assignment before a notary public, identifying the bond assigned by the name of the municipality issuing the same, the number, date, amount, and said assignment shall be acknowledged the same as conveyances of real property. All assignments of bonds shall be forwarded to the state treasurer for endorsement on his records, which record shall set forth the name and address of the assignee, except when it is the desire of the registered owner to release the bond from registration and further assignment, in which case the bond shall be assigned to 'bearer,' and by the state treasurer so endorsed upon his records. The state treasurer shall have printed such forms as may be necessary for use in making such assignments which shall be delivered to persons desiring the same on request."

The above statute is an amendment of R. S. 10-602.

We must look to the above statutes in our search for a delineation of the duty of the state treasurer with reference to these bonds.

R. S. 10-601 provides that the state treasurer shall register such bonds as are presented to him and shall keep a record showing information necessary in identifying the bond. The statute then provides that the municipality shall be notified and the bond shall thereafter be payable at the state treasury and that it shall be stamped showing it to be registered. So far the duty of the state treasurer is plain. It would clearly be the duty of the state treasurer to register any bond tendered to him. There would be no duty on him to investigate the manner in which one tendering bonds for registration obtained possession of them. The effect of the registration is to make the bonds nonnegotiable. (See *Patterson v. Citizens Nat'l Bank*, 143 Kan. 376, 55 P. 2d 352.)

It is R. S. 1933 Supp. 10-602 in which we find the duties of the

state treasurer with reference to the change of registration. That statute provides how a bond shall be negotiated after it has once been registered. It provides that such a bond shall be negotiable only by formal assignment before a notary public. The section then provides for the proper identification of the bond and then provides "said assignment shall be acknowledged the same as conveyances of real property." The section then provides for the forwarding of the assignment to the state treasurer and for the record that the treasurer shall keep, which record is plainly for the purpose of identifying the bond.

There is no provision in the statute that the treasurer shall do more than examine the assignment to see whether it is acknowledged the same as a real-estate transfer. In a transfer of real estate by a guardian the guardian goes before a notary public and signs the deed and then the notary makes a statement that the guardian appeared before him and acknowledged that he was the same person who had signed the deed. If we hold that the statute requires any more than this from the treasurer we must read it into the terms of the statute as a necessary implication from the apparent purpose of the act. Obviously the purpose of the act was to protect owners of bonds in cases where the bonds had come into the hands of a wrongdoer, either a thief or a swindler. It is for this reason that the statute provided that the bonds should become nonnegotiable when registered. Of course some means had to be provided for a transfer of ownership once the bonds had become nonnegotiable. This need was met by the provision for a formal assignment.

Here if the legislature had intended that the treasurer should look beyond the assignment when bonds were presented to him for transfer on his books the statute would have so provided. The case we have here is one where a guardian was having bonds transferred from himself as guardian to himself personally. There probably are not many cases like that during the course of a year. However, if we should hold that in such a case the treasurer was bound to examine the proceedings in probate court to statisfy himself as to their regularity then the same rule would be held to apply where any bond was tendered for a change of its registration. This is true because the mere acknowledgment before a notary would not be any guaranty that the person who tendered the bonds had not stolen them or was a thief. To put such a rule into effect would be to impose a task on the treasurer that the

statute did not contemplate—a liability on his surety beyond any it had reason to expect would be imposed.

The plaintiff argues that the state treasurer owed the same duty to the owner of these bonds that a corporation owes a stockholder with reference to the transfer of corporate stock. The fact is, however, that the duty of the state treasurer arises from the statute. He would owe no duty to owners of bonds at all were it not for this statute. The duty of a corporation to its stockholders arises from a trust relationship. The duty is placed upon the corporation by this relationship to exercise diligence in the transfer of stock belonging to its stockholders.

In the case of *West v. Tintic Standard Mining Co.*, 71 Utah 158, 172, 263 Pac. 490, 495, the court quoted from *Penna. Co. v. Franklin Fire Ins. Co.*, 181 Pa. 40, 45, as follows:

" 'The defendant is a trustee of the capital of all its shareholders; the evidence of such trusteeship to the contributor who has paid his money is the trustee's stock certificate; this paper defendant has illegally canceled and destroyed, thus severing all connection between the shareholder and the trustee, and depriving him of all rights and privileges as a shareholder. He does not want money, but insists on his rights under his contract of membership in the corporation, and the privileges, present and future, to which he is entitled by virtue of membership; and he asks this, not from strangers to his contract who owe him no duty in this particular, but from his trustee, who, though bound to protect his right, yet has, without authority, destroyed the evidence of it.' "

To the same effect is *Geyser-Marion Gold-Min. Co. v. Stark*, 106 Fed. 558.

Plaintiff relies on the case of *Clarkson Home v. Missouri, K. & T. R. Co.*, 182 N. Y. 47, 74 N. E. 571. In that case an agent of the owner of some bonds of the defendant company forged a resolution of the board of directors of plaintiff purporting to authorize the transfer of the ownership of the bonds. Relying on this forged resolution, the transfer agent of the railway company transferred the ownership of the bonds to the agent of the rightful owner. This agent sold the bonds and converted the proceeds to his own use. When sued by the owner the railway company was held liable. This liability was based on the theory that the railway company had agreed with the owner of the bonds to keep a register of the bonds and not to transfer them except under certain circumstances. The court held that the company violated its agreement with the owner of the bonds when it transferred them without making an

independent investigation to determine whether or not the resolution was genuine. The statute does not impose any such a duty on the state treasurer as to bonds registered with him. The only duty imposed by the terms of the statute is that the transfer of a bond shall be acknowledged the same as a transfer of real estate. That requirement was met in this case.

Plaintiff argues that the fact that these bonds were transferred from Sheppard as guardian to Sheppard personally should have put the treasurer on his guard and that without a transfer appearing on the face of the bonds the treasurer owed the duty to conduct an independent investigation. This point is not well taken. There are circumstances under which it would be proper for the bonds to be transferred from the guardian, as guardian, to the guardian personally. We cannot say that the treasurer was bound to assume that the guardian was acting in a wrongful manner. To so hold would place an obligation on the treasurer and his bondsmen far beyond that contemplated by the statute.

The judgment of the trial court is affirmed.

THIELE, J. (dissenting): I cannot agree with the conclusion reached in this case. In effect it is held that under R. S. 1933 Supp. 10-602, where an assignment before a notary public, identifying the bond, etc., is tendered the state treasurer, his only duty is to endorse the assignment on his records. I believe that is only a part of his duty. As interpreted in the court's opinion, under the statute the state treasurer need only examine the submitted assignment to see that the assignor is the registered owner of the bond and that he executed the assignment before a notary public. Plainly, such an interpretation ignores the obvious purposes for which the act was passed.

The statute above referred to is a part of Laws 1923, ch. 225, R. S. 10-601 *et seq.*, and is an amendment of section 2 of the act, the amendment not affecting the question presented in this case. The entire purpose of the act is to protect bond owners in the title to their bonds. Section 1 of the act provides for registration by the state treasurer of state and municipal bonds, and for notification by him to the municipality issuing the same of such registration. Section 2 provides that after registration of any bond it shall be negotiable only by "formal assignment" and it is later provided the state treasurer shall have printed such forms as may be necessary. The statute is silent as to who shall prepare these forms, but the

only conclusion that can be reached from reading the entire act is that the state treasurer shall prepare the forms. There is no requirement the bond itself be returned to the state treasurer with the assignment. It will be noted the assignment is to be a formal assignment. Anything is formal in law that requires certain solemnities in its making or doing. The plain intent of the statute is that the assignment must show on its face the title of the assignor as being the owner of the previously registered bond. If that title shows that it can be divested only as the result of an order of a court of competent jurisdiction, such showing must be made. Here the original registration showed the owner of the bond held it in a fiduciary capacity, and as a guardian who could dispose of it only as a result of an order of the probate court. An assignment, even though acknowledged before a notary public, which failed to state the necessary steps, certainly was not a "formal assignment." When the state treasurer endorsed on his records the name of James G. Sheppard individually as owner of the bond, he did so without the "formal assignment" required by law and in violation of his legal and official duty.

The demurrers of the sureties on the state treasurer's bond should have been overruled.

I am authorized to say that Mr. Justice Harvey concurs in this dissent.